SCHILLER PIANO COMPANY, Appellant, v. HYDE, Respondent.

(162 N. W. 937.)

(File No. 3934.    Opinion filed May 26, 1917.    Rehearing denied June 26, 1917.)

1.  Corporations—Stock Issue for Promissory Note—Note as "Property"—Constitution.

     A promissory note is "property" within the meaning of Const., Art. 17, Sec. 8, providing that no corporation shall issue stock except for money, etc., or "property actually received."

2.  Same—"Fictitious Increase" of Stock—Promissory Note of Lesser Value, in Payment—Constitutional Provision.

     The taking of a promissory note for corporate stock may violate Const., Art. 17, Sec. 8, providing that "all fictitious increase of stock or indebtedness shall be void;" if the note is of less value than the par value of the stock.

3.  Same—Stock Issue, for Note Worth Par—Effect, Under Constitution.

     Such constitutional provision is not violated by acceptance of a promissory note worth par, for corporate stock issued therefor.

4.  Same—Stock Issue for Note, Before, or After, Note Received—Distinction—Note as Stock Subscription.

     The acceptance of a promissory note for corporate stock not issued at time of delivery of the note, is not a violation of Const., Art. 17, Sec. 8, prohibiting issuance of corporate stock except for money, etc., or "property actually received," since the note, prior to payment, amounts to no more than a subscription for stock.

5.  Same—Note Given for Stock—Action Upon Note—Defense Against Endorsee—Estoppel—Constitution.

     Where a corporation has issued stock for a promissory note,

held, in a suit upon a renewal note by endorsee of the original
note for value, that the maker cannot defend upon the ground
that the issuance of the stock prior to payment of the original
note was prohibited by Const., Art. 17, Sec. 8, since the cor-
poration, through negotiation of the note, has received the
money, and defendant is estopped to profit by his own wrong.
      Polley, J., dissenting.

Appeal from Circuit Court, Hughes County. Hon. JOHN F.
HUGHES, Judge.

Action by the Schiller Piano Company against Charles L.
Hyde, upon promissory notes given in renewal of original notes
of which plaintiff was endorsee and given for corporate stock.
From a judgment for defendant, and from an order denying a
new trial, plaintiff appeals. Reversed and remanded.

*Gaffy & Stephens,* for Appellant.

*Howard G. Fuller,* for Respondent.

(1) To point one of the opinion, Appellant cited: 32 Cyc.
699; Meholin v. Carlson, 107 Pac. 755; Sec. 190, Revised Civil
Code of 1903; German Mercantile Co. v. Wanner, (N. D.) 142
N. W. 463; Union Central Life Insurance Co. v. Curtis, 35 Ohio
State, 343; Hazlett v. Butler, 84 Ind. 230; Cook on Corporations,
Vol. 1, Par. 173.

Respondent cited: Const., Art. 17, Sec. 8; Mason v. First
National Bank, (Tex. Civ. App.) 156 S. W. 366; Cope v. Pitzer,
166 S. W. 447.

(2) To point two of the opinion, Respondent cited: E. P.
& S. R. R. v. Thompson, 103 Ill. 187, 202; Memphis & L. R. R.
R. Co. v. Dow (U. S.) 30 L. Ed. 600.

(4) Under point four of the opinion, Appellant submitted
that: The only unauthorized act was the issuing of the stock.
The corporation had the right to accept a subscription for the
stock. It had an equal right to accept a different sort of promise,
to-wit, that contained in the note, to the same end as the stock
subscription. There is no provision, constitutional or statutory,
against a corporation contracting with an individual to issue its
stock to him when he pays for it. The respondent, Hyde, sub-
scribed for stock, the corporation accepted the subscription, Hyde
gave a note, which, at most, was an additional promise to pay;
and the corporation received its money.

Respondent cited: Rogers v. Gladiator Gold Min. & Mill.

Co., 21 S. D. 412, 416; O'Bear Nester Glass Co. v. Antieple Co. (Texas) 108 S. W. 967; Webster v. Webster Ref. Co., 128 Pac. 261, 266; Altenberg v. Grant, 85 Fed. 345; McCarthy v. Texas L. & G. C., 142 S. W. 96.

(5) To point five of the opinion, Respondent cited: Far. & Mill. St. Bk. v. Falvey, 175 S. W. 833; Sturdevant v. Falvey, 176 S. W. 908; Sawyer v. First Natl. Bk., 170 S. W. 1087; Jefferson v. Hewitt, 103 Cal. 624, at p. 630.

GATES, P. J.   On August 19, 1911, in consideration of shares of stock in the United Mercantile Agency, a South Dakota corporation, defendant executed and delivered to said company his promissory notes in the sum of $20,000. Certificates for the shares of stock were delivered to him at that time. Defendant was one of the directors of the company from November, 1911, for a period of eight months. On June 29, 1912, defendant executed and delivered to the company his promissory notes aggregating $10,000, the same being renewals of that much of the previous obligations. These notes were sold to plaintiff July 8, 1912, for full value, less a slight interest discount. Plaintiff was advised of the purpose for which the notes were given. These notes were not paid. Suit was brought on them in the circuit court of Hughes county. The defendant was in default in that case, and thereupon the notes involved in the present suit, aggregating $10,000, were executed and delivered by defendant to plaintiff as renewals of the notes of June 29, 1912. The former suit was abandoned. Const. art. 17, § 8, provides:

No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

The present case came on for trial before the court and jury. At the close of the evidence, upon defendant's motion, the trial court directed the jury to return a verdict for defendant upon the ground that the original notes were void as being in violation of the above section of the Constitution, and therefore that the renewals were void. From the judgment entered pursuant to the directed verdict the plaintiff appeals.

It is rather startling to one's sense of the fitness of things to find a court decision sustaining the ruling of the trial court, but there are a few of them to which we will later advert. The great

majority of decisions, under similar constitutional provisions, hold to the contrary.

[1] It seems to us that the decision of the trial court was wrong for either of three reasons: First, a promissory note is property within the meaning of the constitutional provision; second, even though a promissory note is not property within the meaning of such provision, the taking of a note for shares of stock is not unlawful; it is the delivery of the certificates under such a condition that would be unlawful; third, estoppel.

A promissory note is property within the meaning of the above constitutional provision. German Merc. Co. v. Wanner, 25 N. D. 479, 142 N. W. 463, 52 L. R. A. (N. S.) 453; Pacific Tr. Co. v. Dorsey, 72 Cal. 55, 12 Pac. 49, 13 Pac. 148; Meholin v. Carlson, 17 Idaho, 742, 107 Pac. 755, 134 Am. St. Rep. 286; 32 Cyc. 699. Sections 182, 183, 185, and 190, Civ. Code provide:

"The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Code the thing of which there may be ownership is called property.

"There may be ownership of all inanimate things which are capable of appropriation, or of manual delivery; of all domestic animals; of all obligations; of such products of labor or skill, as the composition of an author, the good will of a business, trademarks and signs, and of rights created or granted by statute."

"Property is either: 1. Real or immovable; or, 2. Personal or movable."

"Every kind of property that is not real is personal."

[2] It would seem to be settled by statute that a promissory note is property. Pacific Tr. Co. v. Dorsey, supra. If not, why is a United States government bond property? Of course, the value of a promissory note is not necessarily commensurate with the figures on the face of it. A promissory note taken in exchange for the issuance of certificates of corporate stock may still violate the above constitutional provision because stock issued or indebtedness incurred for less than full consideration would be "fictitious" within the meaning of that provision. Coler v. Tacoma R. & P. Co., 65 N. J. Eq. 347, 54 Atl. 413, 103 Am. St. Rep. 786; Rolapp v. Ogden & N. W. R. Co., 37 Utah, 540, 110 Pac. 364.

[3] However, there is no intimation in the record that

respondent is not financially responsible. The acceptance of promissory notes that are worth par for the issuance of corporate stock is not a violation of said constitutional provision.

[4] But suppose that a promissory note is not property within the meaning of the constitutional provision; neither the original notes nor the renewals are void. Let us illustrate by four examples:

(a) Defendant subscribes in writing for shares of stock in the corporation. The certificate therefor is not delivered. In an action brought upon said subscription the constitutional provision in question could not be the basis of a defense. Cope v. Pitzer (Tex. Civ. App.) 166 S. W. 447. On the contrary, the company could not recover if it had placed itself in the position that it could not deliver the certificate for shares of stock upon payment by defendant of his subscription.

(b) Defendant executes and delivers a promissory note to the company for shares of stock. The certificate therefor is not delivered. In an action brought by the company upon the note the above constitutional provision would not furnish the basis of a defense. On the contrary, under appropriate pleadings the company would not be given judgment except on condition that the shares of stock be turned over to defendant upon payment of the judgment. The same would be true in an action brought by a purchaser of the note who bought with knowledge of the consideration for which the note was given.

(c) Defendant subscribes in writing for shares of stock in the corporation. The company issues to him a certificate therefor. In an action upon the subscription would the fact that defendant has already received that for which his subscription was given constitute a defense? Surely not. There is no vice in the giving and receiving of the subscription. The vice, if any, is in issuing the certificate for which the subscription was given. And herein we think is the fallacy underlying the decisions of those courts which have held in accordance with the views of the trial court. In Williams v. Evans, 87 Ala. 725, 6 South. 702, 6 L. R. A. 218, the court said:

"A contract which contemplates the violation of a statute, or a Constitution, as a mode of executing such contract, is illegal

and void. It is based on an unlawful consideration, and, if executory, cannot be enforced."

In Mason v. First Nat. Bk. (Tex. Civ. App.) 156 S. W. 366, the court said:

"It is not necessary to appellant's defense herein that the stock for which the note was given should be 'fictitious' or 'void'; it is sufficient that it was issued contrary to law. The doing of an unlawful act is no consideration for a promise to pay, and courts will not enforce the payment of a debt growing out of an illegal transaction."

It seems to us that these courts have mistakenly considered that the unlawful delivery of the stock was the consideration for the notes. It seems to us that the real consideration was the shares of stock, and that the delivery at the particular time was but an incident. In a later Alabama case, Beitman v. Steiner, 98 Ala. 241, 13 South. 87, the court said:

"The case is clearly within the test declared by this court for determining whether a contract attacked for illegality is capable of enforcement, of which it is said that the inquiry 'is whether the plaintiff requires the aid of an illegal transaction to support his case. If he does not, if he has rights originating in a transaction not offensive to law, and has a right of recovery independent of an illegal transaction, such transaction, though he may have participated in it, cannot be employed to defeat him.' "

These declarations, it seems to us, apply to the facts of this example. The right of recovery upon the subscription in no way depends upon the premature delivery of the stock.

(d) Defendant, instead of making a non-negotiable subscription for stock, chooses to give a negotiable promissory note therefor. The certificate for the shares is issued to him. In an action upon the note brought by the company wherein is defendant in a better position to defend than under example "c"? His obligation is merely changed in form. And if the company disposes of the note for full value, even to a purchaser having knowledge of the consideration, why are not all elements of the transaction from that time hence cleared of vice? The company has its money. The purpose of the constitutional provision is met. Ogdensburgh, etc., R. Co. v. Wooley, 3 Abb. Dec. 398; Utica, etc., R. Co. v. Clarke, 25 N. Y. 210. Whatever may be the status of the

defendant with reference to the company, it seems clear to us that he cannot make use of the premature delivery of the stock as a defense to the note.

Applying these illustrations to the facts before us, we are convinced that the above provision of the Constitution offers no defense to the present suit. In 7 R. C. L. p. 245, we find the following:

"The authorities are not in entire accord as to whether the payment of a stock subscription can be made in anything else than money, some holding one way and some the other. But the class of authorities which declare that a subscription may be paid otherwise than in money may be regarded as asserting the more reasonable doctrine, a doctrine better adapted to the practical affairs of business life. According to this view, the payment of stock subscriptions need not be in cash, but may be in whatever, considering the situation of the corporation, represents to that corporation a fair, just, lawful, and needed equivalent for the money subscribed."

The case of Rogers v. Gladiator, G. M. & M. Co., 21 S. D. 412, 113 N. W. 86, relied on by respondent, is not in point. That decision, so far as we are now concerned, simply holds that a contract with a corporation which provides that it shall issue stock in payment of services rendered to a third person violates the above constitutional provision.

[5] Estoppel. It is a maxim of jurisprudence that no man can take advantage of his own wrong. C. C. 2416. If the delivery of the certificate of stock to defendant at the time it was delivered was wrong the defendant was a party to the wrong. "He who consents to an act is not wronged by it." C. C. 2414. In German Merc. Co. v. Wanner, supra, we find the following:

"It is held in Wight v. Shelby R. Co., 16 B. Mon. (Ky.) 4, 63 Am. Dec. 522, that, where it was the duty of the subscriber for capital stock to pay at the time the subscription was made, he could not exonerate himself from liability because he had been allowed to take advantage of his own wrong by not paying at that time."

The statement of facts at the beginning of this opinion discloses a situation that should forever estop defendant from asserting the constitutional provision as a defense. To hold otherwise

would, in the language of Mr. Justice Holmes, be "contrary to the rudiments of fair play."

The judgment appealed from is reversed, and the cause remanded for a new trial.

POLLEY, J. (dissenting). I am not able to agree with the majority opinion in this case. Our Constitution (section 8, art. 17) provides that:

"No corporatiin shall issue stocks or bonds except for money, labor done, or money or property actually received. * * *"

The only consideration received by the corporation in this case for the stock issued to the respondent is the respondent's promissory notes. While promissory notes may be property in the broad sense of the term, they are not such property as is meant by that word where it is used in the above constitutional provision. The word "property," as there user, means such prop-property as may be necessary or useful in carrying on the business for which the corporation was organized. The fact that the maker of the notes involved in this case may be solvent, as is pointed out in the majority opinion, is wholly immaterial. If promissory notes are property within the meaning of the above constitutional provision, it is immaterial whether the maker of such notes is solvent or insolvent. The effect of the majority opinion on this question is to read into the Constitution a condition whereby corporations may accept promissory notes in payment for capital stock provided the maker of said notes is solvent. This practically nullifies the above constitutional provision, and leaves the way clear for a corporation to issue any part or all of its capital stock without putting a dollar into its treasury or receiving any property that can be used in carrying on the business for which it is organized. This is the very evil against which the Constitution is aimed.

The judgment appealed from ought to be affirmed.