SCHILLER PIANO COMPANY, Respondent, v. HYDE, Appellant.

(181 N. W. 196.)

File No. 4671.   Opinion filed February 8, 1921.)

1.  **Appeals—Error—Rulings On Evidence, Instructions, Refused Instructions, Non-Consideration of Where Directed Verdict Proper.**

Where, in the view of the Supreme Court, verdict should have

been directed by trial court for plaintiff, consideration of assignments of error involving rulings on evidence, instructions, and refused instructions, become unnecessary.

2. **Negotiable Instruments—Renewal Notice, Suit On By Endorsee Of Old Notes, Defenses Fraud, Want Of Consideration Re Old Notes, Settlement With New For Old—Maker's Knowledge Of Defensive Facts Before Renewal Notes Given, Effect—Directing Verdict.**

In a suit by an endorsee of promissory notes given for corporate stock, upon renewal notes given as the result of negotiations between maker and plaintiff as well as the present holder of the original notes (transferred by plaintiff endorsee and involved in another pending suit,) the defenses in present suit being want of consideration for the original notes in that they were given for corporate stock concerning which fraudulent representations were made as to its value, that the renewal notes were given with the understanding and upon condition that a part of said corporate stock held by defendant should be sold by plaintiff or its agents and the proceeds applied in payment of the new notes, otherwise the notes to be cancelled; held, that, it being clear from certain correspondence between defendant and plaintiff and its agents, and representatives of the corporation issuing said stock, that defendant knew the facts set up in defense concerning the previous issue of the notes, before the notes in suit were given, that defenses interposed to the renewal notes were such as might have been made to the previous issue, that the notes in suit were delivered in accordance with certain instructions involved in said settlement, and that the parties to the settlement dealt with each other on terms of equality and the plaintiff held no relation of trust or confidence toward defendant, therefore any defenses to the renewal notes which might have been made to the previous issue are unavailing, defendant may not repudiate said settlement, and trial court should have directed verdict for plaintiff.

3. **Corporations—Suit By Foreign Corporation On Renewal Notes, Compliance With Statute After Notes Issued—Whether Delivery Of New Notes Outside Was "Transaction Of Business" Within State.**

The fact that a foreign corporation, suing upon renewal promissory notes, received the renewal notes outside of this state, and that the corporation failed to comply with Sec. 883, Rev. Civ. Code 1903, (providing among other things that a foreign corporation shall not transact any business within this state or sue or maintain suit in any of its courts, until it shall have filed with Secretary of State an authenticated copy of its charter or articles,) until after it had received, outside of the

state, the renewal notes, does not constitute a bar to such suit; since, even though the execution and delivery of notes within this state would amount to transaction of business therein within the meaning of said section (a conclusion not conceded,) yet, the execution of the notes in this state and sending them for delivery outside, where the transaction was concluded, was not transaction of business by a corporation within this state, and did not violate said section.

4. **Trials—Court, Convening At Earlier Hour Than Adjourned Hour, With Unavailable Notice to Party—Instructing Jury In Party's Absence—Directed Verdict Warranted, Non-Prejudice Re Instructions.**

Where, during a jury trial, court convened in absence of appellant's attorney at an earlier hour than that to which it had adjourned, the notice directed by trial judge to be given the parties of the changed hour of convening having reached appellant's attorney too late to enable him to appear at adjourned hour, held, that, the only action taken by court prior to attorney's appearance being the giving of certain instructions, no prejudicial error was committed, inasmuch as court should have directed verdict for respondent.

Appeal from Circuit Court, Hughes County. Hon. John F. Hughes, Judge.

Action by the Schiller Piano Company, a corporation, against Charles L. Hyde, upon renewal promissory notes. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Johnson & Johnson,* for Appellant.

*Gaffy, Stephens & McNamee,* for Respondent.

(3) To point three of the opinion, Appellant cited: Sioux Falls Remedy Co. v. Cope, 28 S. D., 398; Amalgamated Zinc & Lead Co., v. Bay State Min. Co., 23 L. R. A., (N. S.)

(4) To point four, Respondent cited: In re Fleming's Estate (S. D.) 173 N. W. 836; State ex rel Berge C. Patterson, 18 S. D. 260.

GATES, J. This cause was before this court on a former appeal, Schiller Piano Co. v. Hyde, 39 S. D. 74, 162 N. W. 937, to which reference is made. From a verdict and judgment for plaintiff upon a second trial and from an order denying new trial defendant appeals.

[1] Among appellant's 92 assignments of error some 70 of

them relate to rulings on· evidence; others relate to the refusal
of requested instructions and to instructions· given the jury. In
the view we take of this case the trial court should have directed
a verdict for plaintiff; therefore a consideration of the above as-
signments of error becomes unnecessary.

Appellant had executed and delivered to the United Mercan-
tile Agency promissory notes aggregating $20,000 for shares of
its stock; $10,000 of these notes had been sold to respondent;
payment by appellant had been refused, and an action was begun
thereon in the name of F. G. Jones, the president of respondent.
About this time oral negotiations were had between appellant
on the one hand and John Holman and Robert S. Vessey, who
were officers or agents of the Mercantile Agency, on the other
hand, concerning these notes. A letter from Vessey to appel-
lant and letters between appellant and respondent were received in
evidence. They are as follows:

Exhibit 2.

"Cleveland, O. Nov. 11, 1912.

"Mr. Chas. L. Hyde, Pierre, S. D.—Dear Mr. Hyde: Since
receiving your proposition the other afternoon in the office I
wrote the same to the office in Chicago. I have not had a
chance to visit the office, but in a conference with Mr. Jones,
who now holds $10,000 of your paper and with Mr. Cutting, who
is here, I think I have succeeded in getting them to accept the
proposition you have made with possibly one or two minor excep-
tions, which are the following:

"Mr. Cutting claims that he has taken care of $1,500 of the
$20,000 in the way of indorsement on contract and also of
$5,000 of your paper, reducing the amount to $13,500. He now
agrees to arrange with the company to take care of the other
$3,500, reducing it to $10,000, the $10,000 to be renewed, running·
to Mr. F. G. Jones, or his company, which is the Schiller Piano
Co., due, as you suggested, five $2,000 notes January, February,
March, April and May. These notes Mr. Cutting agrees to take
up by the resale of your stock as they become due. Under this
arrangement Mr. Jones will want any expense that is obtained
in the bringing of suit on his notes in Pierre settled there by you
and you to take up the balance of paper that is out over and above
the $13,500 in cash.

"I trust that this adjustment will meet with your approval and the matter fixed up at the earliest possible date.

"There never was a time in the history of this company when they needed such boosters as you as now.  I feel that you want to be a booster in this great enterprise, as you intimated in your talk with me.

"Write the office on receipt of this if you accept this proposition.

"I have under consideration the other letter to the president and expect to send you such a letter as will be helpful to you. Let me know where to send a letter as will reach you in Washington.

"With kind personal regards, I remain,

"Yours very sincerely,        R. S. Vessey."

Exhibit N.

"Pierre, South Dakota, Dec. 5, 1912.

"Mr. Jones, Pres. United Mercantile Agency, Chicago, Ill.— Dear Sir: Letter today from the C. & C. Bank informs me that papers' &c. sent to them last month by me had not been taken up as per understanding and agreement had with your representatives. They inform me that 250 additional shares of stock are demanded; I am sending by this mail another certificate (number 4702) for 250 shares to be delivered with the other 250 sent last month. Check for $4,000 to apply on principal of the old notes and check for  $215.00 to apply toward interest previously sent.  I have instructed the bank to return all to me if they are not taken up within a few days.

"I was called home suddenly from the East and went through Chicago Saturday night or Sunday morning and could not remain over Sunday and Monday to see you.  Do not see any good could come of my being there in person.  I have been treated shamefully so far in this matter and it is only consideration for friends and the fact that differences in business affairs can and should be settled more cheaply and advantageously, without the aid of attorneys and court costs, that I have not long ago insisted upon a complete liquidation and adjustment of the entire business through the courts of justice.

"I am certain that it will be much to the interests of every person interested in the United Mercantile Agency that the settle-

ment now at the bank there be made as per previous understandings. Personally I will not go any further, having already done more than I agreed to or should be asked to. The old notes you have sent here for suit will never be collected in the courts of equity.

"Yours respectfully,        Chas. L. Hyde."

Exhibit O.

"Mr. Chas. L. Hyde, Pierre, S. D. Yours of the 5th addressed to me as president of U. M. A. is at hand and noted. In reply would say I am not president of this company and never have wanted to be. Neither do I hold any office except that of director and chairman of a committee who have been endeavoring to organize this company and put it on a paying basis, and to save the interests of all stockholders in the concern. To do this I have invested about $200,000 of my own money. This with what I should have had from notes of stockholders like yourself would have put the company in good shape, instead of being on the verge of bankruptcy for the past six weeks. At this time I am endeavoring to enlist new capital to make good what has been invested. And as you are a large stockholder I would like to have met you and presented the proposition I am now presenting to others, and I believe you would have joined us.

"Now regarding notes held by the Schiller Piano Co., these were purchased and paid for long before due and before I was identified at all with the company except as a stockholder. I cannot see where you have any defense against these notes and before beginning suit I had Mr. Holman call on you with a view of getting a settlement but you declined to consider the proposition and as the company had use for the money the notes were placed for collection. In the amount sent to the C. & C. Bank you have made no provision to pay the 7 per cent interest on $10,000 of these notes running from June 29th until date of renewal notes, also same rate of interest on $2,500 from July 1st until same date as above. You state you will adjust this item of interest with the U. M. A. This does not concern them, but belongs to us, and provision must be made for it before settlement can be made. The additional certificate of stock together with the other one sent we can hold as against our other $2,500 note. We will only accept the $10,000 with the distinct understanding

that you promptly care for them at maturity. Neither ourselves or the United Mercantile Agency is responsible for any deal you may have with Mr. Cutting. As soon as you notify us that this proposition is satisfactory and forward the check for interest, we will recall the notes.

"Yours truly,        Schiller Piano Co.
"12-9-12."

Exhibit M.

"Pierre, S. D., Dec. 11, 1912.

"F. G. Jones, United Mercantile Agency, Chicago, Ill.—Dear Sir: Yours of the 9th inst. at hand and carefully noted. In accordance with your request I am today sending to the C. & C. Nat. Bank, Chicago, a further remittance of interest of $250.00 this makes in all $465.00 they now hold to apply on interest. This is int. on the $10,000.00 from June 29th to Nov. 15 and on the $7,500.00 from July 1st to Nov. 15, which is the date of the renewal paper.

"They also now hold 500 shares of the preferred stock. Also $4,000.00 which with the $3,500.00 supplied by Mr. Cutting will make $7,965.00 cash and $10,000 new paper to take up the $17,500.00 old paper.

"The new paper is made to run to the Schiller Piano Co., and I have and will to-day instruct the C. & C. Bank to deliver all of this as above outlined to you upon your turning over to them for me the old paper, in all amtg. to $17,500.00, and I will be glad to have the matter adjusted and trust that future transactions will be mutually satisfactory. I certainly do not want at any time any thing more than is right and fair.

"Thanking you for your attention to the matter, I remain,

"Very truly yours,        Chas. L. Hyde."

[2] It is clear from the evidence that appellant knew of the facts, as he claimed them to be, which would justify a defense on his part of the previous issue of notes, before the notes in suit were given. It is clear that the defenses appellant made at the late trial, and for which he now contends, were defenses he might have made to the previous issue. It is clear that the notes in suit were delivered in accordance with the instructions of the above Exhibit O. It is clear that in making the settlement the parties dealt with each other on terms of equality, and that re-

spondent did not hold any relation of trust or confidence towards appellant. Cleaveland v. Richardson, 132 U. S. 318, 10 Sup. Ct. 100, 33 L. ed. 384; Hennessy v. Bacon, 137 U. S. 78, 11 Sup. Ct. 17, 34, L. ed. 605. Therefore any of the defenses appellant makes to the notes in suit which he might have made to the previous issue are unavailing to him. He should not be permitted to repudiate such settlement. The trial court therefore should have directed a verdict for respondent. See 25 L. R. A. (N. S.) 283, note III.

[3] It is claimed that because respondent is a foreign corporation it did not have capacity to bring this action, and that the giving of the renewal notes by appellant was a transaction of business by the corporation in this state. The statute relating to foreign corporations in effect at the time of the giving of the notes and of the bringing of this action was section 883, Rev. Civil Code 1903. After the giving of the notes and before beginning this action respondent complied with that section of statute. It therefore had the right to bring this action unless the giving of the notes was a violation of that section. Even though the simple execution and delivery of promissory notes within this state would amount to the transaction of business in this state within the meaning of that section, which we do admit, yet the execution of the notes in this state and the sending of them to Chicago, Ill., where the transaction was concluded, was not the transaction of business by respondent corporation within this state, and therefore did not constitute a violation of said section 883. Coffin v. Smith, 26 S. D. 536, 128 N. W. 805.

[4] Error is assigned because of the fact that during the trial the court convened in the absence of appellant's attorney at an earlier hour than that to which it had adjourned. Because of a funeral the court adjourned at the close of one day until 2 o'clock p.m. the following day. It was thereafter learned that the funeral would be held on another day, so the trial judge decided to convene court at 10 o'clock a.m., and directed that notice be given to the parties. For some reason appellant's attorney was not notified in sufficient time to enable him to appear at 10 o'clock a.m. Nothing transpired during his absence except the giving to the jury of a portion of the court's instructions to the jury. Inasmuch as the court should have directed a verdict for

respondent, no prejudice resulted to appellant from the giving of a portion of the instructions in the absence of appellant's attorney. But if the case had been one for the jury, the court carefully protected appellant's rights, and no prejudice resulted to appellant.

Other errors assigned are deemed too trivial to warrant discussion.

The judgment and order appealed from are affirmed.