## APPEAL OF DEERLAND TURPENTINE CO.

*Docket No. 6182. Decided September 30, 1926.*

1. A South Dakota corporation may legally accept promissory notes worth par in payment for the issuance of its corporate stock.

2. Evidence examined and *held* insufficient to show that a note received in payment for capital stock was worth par. Such note excluded in the computation of invested capital.

3. Where a loss was sustained under a contract in 1920, and all the factors necessary to determine the amount were known in that year, although the amount was not computed until 1921, *held*, that such loss is deductible in 1920, the books being kept upon an accrual basis.

*Camden R. McAtee, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes in the amount of $14,028.11 for the calendar year 1920. The issues presented are whether a demand promissory note given for stock may be included in invested capital, and whether the petitioner is entitled to deduct a claimed loss.

### FINDINGS OF FACT.

The petitioner is a South Dakota corporation with its principal office at New Orleans, La., and is engaged in the production of turpentine and resin.

At a special meeting of the stockholders of the petitioner on June 2, 1919, it was voted to increase the capital stock from $5,000 to $80,000 by the issuance of 750 additional shares at $100 each, par value. Of this additional stock, W. B. Gillican, president of the petitioner, subscribed for 390 shares, and L. L. Shaw, who then owned 24 shares, subscribed for 360 shares. In payment for the 360 additional

shares, Shaw gave his promissory note for $36,000, dated June 2, 1919, payable on demand to the New Orleans Naval Stores Co., Inc., and indorsed by that company to the petitioner, bearing interest at 8 per cent, and pledged the stock as collateral security. At the time Shaw executed the note he owned, and still owns, a considerable amount of real property.

On December 31, 1923, the petitioner declared a dividend of $90,000, of which $43,200 was credited to Shaw:

December, 1923.

– 31 –

| | |
|---|---:|
| Divided Account | $90, 000. 00 |
|     L. L. Shaw, Special Account | $43, 200. 00 |
|     New Orleans Naval Stores Co | 46, 800. 00 |

Distribution of above dividend on basis of 48 per cent and 52 per cent ownership.

Of such amount, $11,540.22 was applied in full settlement of interest on his note for $36,000 at 7 per cent from the date of the note to December 31, 1923, and $17,504 was applied against the principal of the note. The balance of Shaw's share of the dividend was applied to reduce his indebtedness to the taxpayer on other notes and drafts. No payments on the $36,000 note, other than the above credits, have been made.

The Commissioner refused to permit such $36,000 to be included in invested capital.

The products of the petitioner were sold by the New Orleans Naval Stores Co. On January 7, 1920, the Gillican-Chipley Co., Inc., the Western Naval Stores Co., the New Orleans Naval Stores Co., and the Lake Charles Naval Stores Co., entered into an agreement with the sales department, Gillican-Chipley Co., Inc., a Louisiana corporation, appointing the latter corporation exclusive sales agent of their products and agreeing to pay it a commission of 1½ per cent on the net amount of its sales of their products. The agreement further provided that each of the four corporations would absorb one-fourth of all losses sustained by the appointed selling corporation and that any profits made by the selling corporation should be paid over to the four corporations in the proportion of one-fourth thereof to each.

The sales department, Gillican-Chipley Co., Inc., sustained a loss during the year 1920. The amount of the loss was not determined until January, 1921. A portion of the loss, $128,983.07, was charged to the New Orleans Naval Stores Co., which in turn distributed its

portion among its subsidiaries by the following journal entry under date of January 31, 1921:

| | |
|---|---|
| Deerland Turpentine Co | $21, 382. 99 |
| Escambia Turpentine Co | 10, 826. 49 |
| Hood Naval Stores Co | 42, 667. 39 |
| Quitman Naval Stores Co | 32, 429. 31 |
| Wilco Turpentine Co | 21, 676. 89 |
| Loss and Gain, 1920 | $128, 983. 07 |

Our loss on stock in Sales Dept. carried for above and now prorated on basis of $24.493 per barrel of turpentine produced.

A journal entry to reflect the loss charged to it was made on the books of the petitioner under date of January 31, 1921, as follows:

| | |
|---|---|
| Loss and Gain, 1920 | $21, 382. 99 |
| New Orleans Naval Stores Co | $21, 382. 99 |

Loss on stock of Sales Dept. Inc. prorated on basis of $24.493 per Bbl. of turpentine produced.

The amount of $21,382.99 was claimed by the petitioner as a loss in its income-tax return for 1921, but was disallowed by the Commissioner.

W. B. Gillican was president of both the petitioner and the New Orleans Naval Stores Co. L. L. Shaw was vice president and a director of the petitioner, but had no interest in the New Orleans Naval Stores Co.

## OPINION.

PHILLIPS: The first question for decision is whether the petitioner may include in invested capital the note given by Shaw in payment for 360 additional shares of capital stock of the petitioner. The Commissioner contends that, under the Constitution of South Dakota, a corporation organized in that State may not legally accept notes in payment of capital stock. Article 17, section 8, of the South Dakota Constitution provides:

No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void.

This provision was considered in *Schiller Piano Co.* v. *Hyde*, 39 S. D. 74; 162 N. W. 937, in which case it was held that:

A promissory note is property within the meaning of the above constitutional provision. * * * The acceptance of promissory notes that are worth par for the issuance of corporate stock is not a violation of said constitutional provision.

The petitioner relies upon the decision of this Board in the *Appeal of Hewitt Rubber Co.*, 1 B. T. A. 424, and *Appeal of American Steel*

*Co.*, 1 B. T. A. 839. In those appeals, in which notes given for stock were permitted to be included in invested capital, and in the *Appeal of Ready Auto Supply Co.*, 2 B. T. A. 730, the decisions turned upon the *bona fides* of the transactions. In the latter case the taxpayer was denied the right to include the notes in invested capital, and it was stated, at p. 734:

> The Board is not disposed to extend what it believes to be the sound rule indicated in the *Appeal of Hewitt Rubber Co.*, *supra*, to cases generally involving indebtedness of stockholders to corporations on account of their stock. Only transactions clearly evidencing good faith may be so recognized.

A consideration of the *bona fides* of such transactions is necessary in view of the wording of section 326(a)(2) of the Revenue Act of 1918, providing that "invested capital" means the "actual cash value of tangible property * * * bona fide paid in for stock or shares * * * ."

In the present appeal we find the petitioner receiving for the stock issued to Shaw his note payable to the New Orleans Naval Stores Co., Inc., and indorsed by that company to the order of the taxpayer. Shaw has never made any payments on the note. His liability on it has been reduced, not by payments, but by dividends on the stock issued for the note. The only evidence offered as to Shaw's solvency was the testimony of one witness, who testified that he considered Shaw "worth a good deal more than the amount due on the note," and that "he owns a large quantity of land, and especially the land at the present prices. I think his assets have increased."

These facts fall far short of being convincing either of the *bona fides* of the transaction or of Shaw's ability to meet his liability on the note. Nor is there any showing of the financial condition of the indorser. We shall not disturb the action of the Commissioner in excluding from invested capital for the year 1920 the note for $36,000.

The petitioner sold its products through the New Orleans Naval Stores Co. That company entered into an agreement with three others, whereby a joint sales department was created, the companies agreeing to share equally any profits or losses of this sales organization. There is evidence in the record to the effect that the petitioner was to share in any sales loss which might be sustained by the New Orleans Naval Stores Co. The petitioner did in fact share such loss. The two companies were not affiliated and no reason is shown why a loss should have been paid by the petitioner if there was no liability. The fact of payment, corroborating the oral testimony, is very convincing that the liability existed, and while the amount was not determined until 1921, all of the factors necessary to determine the amount were ascertainable at the close of 1920. The accounts of the

taxpayer are kept on the accrual basis and in such circumstances the loss is deductible in the year 1920. *United States* v. *Anderson*, 269 U. S. 422; 46 Sup. Ct. 131; 5 Am. Fed. Tax Rep. 5674.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*