Appeal of **AMERICAN STEEL CO.**          **Docket No. 669.**

> Under section 326(a) of the Revenue Act of 1918, interest-bearing demand promissory notes of solvent and responsible makers, actually and bona fide paid in for common and preferred stock of a Pennsylvania corporation, constitute invested capital of such corporation at the time paid in to the extent of their actual cash value.

Submitted February 19, 1925; decided March 18, 1925.

*Stewart M. Seymour, Esq.*, and *John W. Drye, Esq.*, for taxpayer.
*Arthur H. Fast, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from a determination by the Commissioner made on September 18, 1924, of additional income and profits tax for the calendar year 1918 in the amount of $76,033.72.

### FINDINGS OF FACT.

Taxpayer is a Pennsylvania corporation with its principal office and place of business at Pittsburgh, Pa.

The corporation had issued and outstanding prior to June 1, 1918, 7,000 shares of common stock and 6,000 shares of preferred stock of the par value of $100 per share, or a total outstanding capital stock of $1,300,000, as follows:

| Common stock | | Preferred stock | |
|---|---|---|---|
| M. B. Kelly | 6,527 shares | M. B. Kelly | 5,455 shares |
| Mrs. M. B. Kelly | 5 Do. | James P. Kelly | 200 Do. |
| James P. Kelly | 467 Do. | Jas. A. McCrory | 80 Do. |
| Jas. McCrory | 1 Do. | H. J. Scanlon | 40 Do. |
| | | Alice Kelly | 86 Do. |
| | | Mary Kelly | 86 Do. |
| | | James Kelly, sr | 43 Do. |
| | | E. M. Reilly | 5 Do. |
| | | W. C. Smeltz | 5 Do. |
| Total | 7,000 Do. | Total | 6,000 Do. |

At a meeting held on June 6, 1917, the stockholders of the corporation voted to increase its capital stock from $1,300,000 to $3,000,000. Accordingly on June 1, 1918, the additional issue of the common and the preferred stock was purchased—interest-bearing demand promissory notes being paid in therefor. Payments, in addition to interest, were thereafter made upon the principal of the notes, as follows:

| | Shares, common | Shares, preferred | Total of notes | Payments on principal of notes |
|---|---|---|---|---|
| M. B. Kelly, president | 7,467 | 8,350 | $1,581,700 | July 1__ $151,700 |
| Jas. P. Kelly, treasurer | 533 | 300 | 83,300 | |
| H. J. Scanlon | | 165 | 16,500 | July 1__ 10,000 |
| E. M. Reilly, jr | | 10 | 1,000 | Do. 1,000 |
| W. C. Smeltz | | 10 | 1,000 | Do. 1,000 |
| Jas. A. McCrory | | 165 | 16,500 | Do. 3,000 |
| | | | | Oct. 1__ 600 |
| Total | 8,000 | 9,000 | 1,700,000 | 167,300 |

The president of said corporation was M. B. Kelly; the treasurer, James P. Kelly. The other purchasers of the stock were employees of the corporation.

At a special meeting of the directors held on June 24, 1918, the following resolution was adopted:

*Resolved,* That by virtue of the consent of the stockholders of the American Steel Co., authorizing an increase in the capital stock thereof, from $1,300,000 to $3,000,000, given at an election duly held for that purpose on the 6th day of June A. D. 1917, the capital stock of said company had been increased from $1,300,000 to $3,000,000, said additional stock being issued for cash.

It was moved and seconded and carried that the Treasurer be instructed to file with the Secretary of the Commonwealth, certificate of the increase of cap-

ital stock with company checks to pay for the bonus of ⅓ of 1 per cent on $1,700,000 or $5,666.67 and $5 in payment for fee for filing return.

The following certificate was filed with the Secretary of the Commonwealth of Pennsylvania:

> This is to certify that by virtue of the consent of the stockholders of the American Steel Co., authorizing an increase in the capital stock thereof from $1,300,000 to $3,000,000, given at an election duly held for that purpose, on the sixth day of June A. D. 1917, the capital stock of said company has been increased from $1,300,000 to $3,000,000, said additional stock being issued for cash.
>
> [SEAL.]                    (Signed)         JAMES P. KELLY, *Treasurer.*

The purpose of the increase in 1917 of the authorized capital stock from $1,300,000 to $3,000,000 and the sale of the additional issue of 17,000 shares on June 1, 1918, was to provide funds for an expansion program decided upon by the corporation, involving the enlargement of the plants then held and the purchase of other plants. There was actually expended for additions to the plants owned in the years 1918 to 1922 the sum of $915,094.82. The evidence shows that business conditions on and prior to June 1, 1918, warranted extensions and expansion in the business of the taxpayer and, at the time of the issuance of the additional stock and the receipt by the corporation of the demand promissory notes, the taxpayer had a definite program outlined. In 1918 taxpayer purchased a tinplate mill, which it improved and enlarged. A nail mill which it owned at that time was also enlarged so as to include the manufacture of wire. In addition to these improvements and additions taxpayer was negotiating for the acquisition of the Carnavan Tin Plate & Sheet Co. and the Page Steel & Wire Co., definite offers being made to the owners of these plants by the taxpayer. During 1920 and 1921 by reason of business conditions the taxpayer abandoned its efforts to acquire these plants and paid definite sums to the contractors in order to cancel the contracts theretofore entered into for improvements and additions then under way. At the time of the sale of the additional 17,000 shares of stock there was no understanding or suggestion that the notes paid in therefor would, in any event, be canceled or that the definite expansion program decided upon would not be carried out. The 8,000 shares of common and 9,000 shares of preferred stock were actually issued to the persons, and in the amounts above mentioned, on June 27, 1918, the common stock being regularly voted by the persons to whom it was issued. Dividends were regularly paid on the total outstanding preferred stock, but no dividends were paid on the common stock.

Between June 1, 1918, and April 3, 1922, the sum of $420,000 was paid on the principal of the notes aggregating $1,700,000, leaving outstanding on April 3, 1922, the sum of $1,280,000, the same representing the par value of 12,800 shares of stock as follows:

|  | Common | Preferred | Total |
|---|---|---|---|
| June 1, 1918, amount issued | $800,000 | $900,000 | $1,700,000 |
| Paid by cash during year— |  |  |  |
| 1918 | $26,700 | $140,600 | $167,300 |
| 1919 | 60,000 | 73,400 | 133,400 |
| 1920 | 3,300 | 116,000 | 119,300 |
|  | 90,000 | 330,000 | 420,000 |
| Amount outstanding | 710,000 | 570,000 | 1,280,000 |

At a meeting of the directors on April 3, 1922, the following resolution was adopted:

On motion properly seconded, that it be the sense of this meeting, that we cancel all the unpaid collateral notes, effective as of Jan. 2, 1922, that were taken in payment of stock of the American Steel Co., and which stock is to revert back to the American Steel Co., and held by them as treasury stock. The total amount of collateral notes to be canceled and stock to be returned to the company, is as follows, and individuals to be credited for same on books of the company.

| Name. | Number of shares. | Amount. |
|---|---|---|
| M. B. Kelly | 12,000 | $1,200,000 |
| J. P. Kelly | 650 | 65,000 |
| H. J. Scanlon | 50 | 5,000 |
| J. A. McCrory | 100 | 10,000 |
| Total | 12,800 | 1,280,000 |

The repurchase of the stock by the corporation by the cancellation of the unpaid balance of the outstanding notes was due to the fact that the carrying out of the program of improvements and expansion was unwarranted on account of business depression.

The makers of the notes paid in for stock on June 1, 1918, were each entirely responsible and solvent on that date and at all times since, and were fully able to pay the amounts of their respective notes on demand. The notes could have been sold on June 1, 1918, and at any time subsequent thereto, for their face value, and they had on that date and at all times thereafter an actual cash value of the full amounts thereof. Interest at 6 per cent per annum was paid quarterly by the makers of the notes.

In computing the taxpayer's invested capital for 1918 the Commissioner refused to allow any portion of the $1,700,000 from June 1, 1918, but allowed the cash payments of $167,300 from the dates of payment, disallowing, however, the entire unpaid balance of the notes amounting to $1,552,700.

## DECISION.

The deficiency for the calendar year 1918 should be recomputed by including in taxpayer's invested capital the amount of $1,700,000 from June 1, 1918. Final settlement will be made on consent or on seven days' notice in accordance with Rule 50.

## OPINION.

LITTLETON: The issues presented in this appeal are: (1) Whether, in view of the provisions of the statutes of Pennsylvania (Acts of April 17, 1876, and March 24, 1905), taxpayer is entitled under the provisions of section 326 (a) (2) of the Revenue Act of 1918 to include in invested capital for 1918 the actual cash value of interest-bearing demand promissory notes paid in for stock; and (2) whether the notes amounting in the aggregate to $1,700,000 were in fact bona fide paid in for stock.

The deficiency arises for the most part from the refusal of the Commissioner to allow as a portion of the taxpayer's invested capital from June 1, 1918, the sum of $1,700,000, represented by interest-

bearing demand promissory notes paid in on that date for 17,000 shares of common and preferred stock, par value $100 per share, issued on June 27, 1918. Amounts paid on the principal by the makers of the notes were allowed by the Commissioner as part of taxpayer's invested capital for 1918 commencing from the dates of actual payments. Interest at 6 per cent paid quarterly, commencing on July 1, 1918, was reported by the corporation and included by the Commissioner as taxable income.

It appears from the Commissioner's answer that in computing the invested capital he entirely excluded the notes regardless of their actual cash value, allowing as invested capital only the cash payments thereon from the dates paid, on the grounds that, under the laws of Pennsylvania, a corporation may not issue stock except for money, labor done, or money or property actually received, and that no note or other obligation given by a stockholder may be considered as payment of any part of the capital stock of such corporation; that the notes were not bona fide paid in for the stock. The Act of April 17, 1876 (P. L. 30, sec. 4,) provides that:

Every corporation created under the provisions of this act or accepting its provisions, may take such real and personal estate, mineral rights, patent rights and other property, as is necessary for the purposes of its organization and business, and issue stock to the amount of the value thereof, in payment thereof, and the stock so issued shall be declared and taken to be full paid stock, and not liable to any further calls or assessments; and in the charter and the certificates and statements to be made by the subscribers and officers of the corporation, such stock shall not be stated or certified as having been issued for cash paid in to the company, but shall be stated or certified in this respect according to the fact; and the executors, or administrators of any deceased tenant in common of lands, mines and mineral rights so proposed to be taken may, and they are hereby authorized to convey the individual estate and interest of such decedent therein to such company, receiving therefor so much stock in such company as the said decedent would have been entitled to receive in his lifetime, to be held in the same manner as the lands: Provided, That no directions or limitations contained in any last will and testament of such decedent shall be in any manner interfered with: And provided, That, before making such conveyance, such executors or administrators shall give sufficient security, to be approved by the orphan's court having jurisdiction of their accounts, for the faithful application of the stock received therefor; *no such corporation shall issue either bonds or stock except for money, labor done or money or property actually received, and all fictitious increase of stock or indebtedness in any form shall be void;* every such corporation may provide for the issue of deferred stock in payment for such real or personal estate or mineral rights, and, if so provided, it shall be expressly stated in the charter filed, or in a certificate to be made and recorded, or, in the acceptance of this statute, to be filed by any corporation accepting its provisions, with the amount of such deferred stock, and the consideration of the same, and the terms on which the same shall be issued; and the said stock may be made to await payments of dividends thereon, until out of the net earnings at least five per centum has been declared and paid upon the other full paid stock of the corporation. (Italics ours.)

The Act of March 24, 1905 (P. L. 56, sec. 1) provides as follows:

The stock of every corporation created under the provisions of this statute shall be deemed personal property; and no shares shall be transferable until all previous calls thereon shall have been fully paid in, or shall have been declared forfeited for the nonpayment of calls thereon. *No note or obligation given by a stockholder, whether secured by pledge or otherwise, shall be considered as a payment of any part of the capital stock.* It shall and may be lawful for any corporation, organized under the provisions of this act either for the purpose of carrying on any manufacturing business, or for the supply of water, or for the manufacture or supplying of light, to subscribe for, take,

purchase, hold, and dispose of the bonds or stock in any company of the same character, incorporated under the provisions of this act, or its supplements, or guarantee the payment of said bonds and the interest thereon, or either principal or interest, or to enter into contracts for the use or lease of the corporate property, real, personal or mixed, of such company, upon such terms as may be agreed upon with the company or companies owning the same, and to run, use and operate such property in accordance with such contract or lease. (Italics ours.)

The Commissioner relies upon the italicized portions of the statutes above quoted in support of his action in excluding from invested capital the demand notes amounting to $1,700,000 from June 1, 1918, and allowing only the cash payments, totaling $167,300, from the dates of actual payments in that year.

This case, so far as the law of Pennsylvania respecting the giving of notes for stock is concerned, presents the same question decided by this Board in the *Appeal of Hewitt Rubber Company*, 1 B. T. A. 424. In that appeal it was stated:

Congress intended by the language used in section 326 (a) that for the purpose of computing the profits tax, notes in reality and without fraud or collusion paid in for stock should be included in invested capital unless such *sale* of stock is rendered absolutely void by positive statute. * * * A State statute imposing certain restrictions upon corporations for the purpose of enforcing full payment for its stock, designed and intended to serve an entirely different purpose, can not operate to nullify the plain provisions of the Federal statute.

Neither the Act of April 17, 1876, nor the Act of March 24, 1905, *supra*, makes void a bona fide sale of stock for a note. They provide that all stock purchased must be paid for in money, labor, or property; that all fictitious increases of stock shall be void and that a purchaser may not escape liability to pay for stock by the giving of a note. Installment sales are not prohibited. These sections do not prohibit the issuance of stock for notes, and such notes, if given for stock, are enforceable by the corporation against the makers thereof. This is established by the decisions of the courts of Pennsylvania. *Hacker* v. *National Oil Refining Co.*, 73 Pa. St. 93. It is admitted by the Commissioner that notes given for stock of a Pennsylvania corporation are enforceable in the hands of the corporation. The notes here involved are, therefore, not illegal nor void under the laws of Pennsylvania and they satisfy in every respect the provisions of section 326 (a) (2), being tangible property paid in for stock.

On the second point, it was contended by the Commissioner that the notes were not in fact bona fide paid in for stock within the meaning of section 326 (a) (2) of the Revenue Act of 1918, his contention being based apparently upon the fact that on April 3, 1922, the corporation repurchased, and thereafter held as treasury stock, 12,800 of the 17,000 shares originally issued on June 1, 1918, by the cancellation of the then remaining unpaid notes amounting in the aggregate to $1,280,000. The Board can not take this view of the matter from the facts in this appeal. Had the corporation increased its capital stock during the period of the high excess-profits and war-profits taxes without justification or good reason appearing therefor, taking notes in payment for the stock and canceling such notes upon the repeal of the profits taxes, then there would be justification for the presumption that an avoidance of profits tax was the motive.

If this were true, the notes would not constitute property bona fide paid in for stock and this would also be true in respect to stock issued for cash under such circumstances; but the mere fact of cancellation of the notes, and retirement of the stock by the corporation several years later, in the absence of any circumstance to indicate bad faith, can not justify the disallowance for invested capital purposes of the actual cash value of the notes at the time paid in.

A subsequent retirement of all or part of the stock by the cancellation of the notes, or a portion thereof, presents only a circumstance to be taken into consideration in determining whether or not the notes were originally bona fide paid in.

The evidence in this appeal shows that in June, 1917, the stockholders voted to increase the capital stock of this corporation, the increase being for the purpose of developing and expanding the business. This program, which had been definitely decided upon, was carried out to a considerable extent by additions to taxpayer's plant. Serious efforts were made to acquire other businesses similar to that of the taxpayer, which would, but for the fact that the parties were unable to agree on a price, have absorbed the amount provided for in the sale of the additional stock. The president and the treasurer of the corporation testified that prior to June 1, 1918, certain definite plans for enlargement and expansion of the business had been decided upon; that business conditions at that time seemed to justify expansion. The facts further show that subsequent to June 1, 1918, the taxpayer purchased one additional plant, enlarged one of its own plants, and seriously endeavored to purchase, among others, the plants of the Page Steel & Wire Co. and the Carnavan Tin Plate & Sheet Co., but was unable to do so, the price demanded being considered excessive. Before the parties had reached an agreement as to a price which the taxpayer was willing to pay and the owner was willing to accept for said properties, trade conditions had taken a less favorable trend during 1920 and 1921, and the taxpayer therefore abandoned its efforts to acquire additional plants. In addition to the decision not to acquire other properties, the taxpayer canceled improvements and additions to its own plants, and in order to do so it was required to pay definite sums to contractors for cancellation of contracts theretofore entered into for such improvements.

The Board is of the opinion, from the facts in this appeal, that the notes, amounting to $1,700,000, were bona fide paid in on June 1, 1918, for 17,000 shares of stock issued therefor. There is apparently no dispute as to the actual cash value of the notes at the time paid in, none being possible under the evidence of record. It is shown that each of the makers of the notes was solvent and responsible and able at all times to pay the full amount of each of the respective notes, and that, had the corporation so desired, it could have sold the notes at any time for their full face value.

In view of the evidence presented, the Board is likewise of the opinion that the retirement by the corporation of the 12,800 shares of stock on April 3, 1922, by the cancellation of the then outstanding notes, was in good faith and was justified by business conditions existing at that time. The fact of the repurchase of the stock by cancellation of the notes does not therefore in this case indicate bad faith at the time the notes were paid in.