## APPEALS OF THE PICTORIAL REVIEW CO.

Docket Nos. 4487, 6661, 11303.    Decided November 10, 1926.

1. A corporation advanced sums of money to three of its principal stockholders, who promised to repay and were at all times solvent. The amounts were carried as accounts receivable. *Held*, the accounts are properly included in invested capital.

2. A corporation, having paid a dividend, needed credit, and the stockholders adopted a resolution that the dividend be "rescinded," and gave their notes. *Held*, the notes are properly included in invested capital.

*Nelson T. Hartson, Esq.*, for the petitioner.
*Benjamin H. Saunders, Esq.*, for the Commissioner.

These proceedings were consolidated by agreement of the parties. They involve deficiencies in income and profits taxes for 1918 and 1919 aggregating $57,259.13 which result from the Commissioner's exclusion from invested capital of (1) the face value of promissory notes of three principal officers given in exchange for the withdrawal by them from the corporation of cash, (2) promissory notes given by stockholders to the corporation in the amount of a dividend theretofore declared and later rescinded, and (3) the amount of prior year's taxes. The facts are to a substantial degree admitted in the answer and to some extent derived from oral testimony.

### FINDINGS OF FACT.

The petitioner is a New York corporation, organized in 1903, having its principal office at New York, N. Y.

During 1918 and 1919 the petitioner had an authorized capital in the amount of $600,000, which was divided into 120,000 shares of a par value of $5 each and which was all outstanding and fully paid.

The petitioner's books of account reflected surplus at the following dates and in the following amounts:

| | |
|---|---|
| December 31, 1917 | $1, 943, 890. 02 |
| December 31, 1918 | 2, 059, 683. 91 |
| December 31, 1919 | 2, 241, 669. 49 |

From time to time during 1917 and prior years the petitioner made certain cash loans from its capital or surplus to William P. Ahnelt, the president and principal stockholder of the corporation, which were charged to the account of Ahnelt on the books of account of the corporation. Ahnelt had promised to repay said loans upon demand by the corporation. During the same period Ahnelt made certain cash payments to the corporation which were credited to his account. At the close of business on December 31, 1917, he owed the petitioner on this account the amount of $536,946.58, which was carried on the petitioner's books of account and balance sheet as an account receivable.

During 1918 additional loans were made to Ahnelt and charged to his account on the books of the petitioner corporation. He had promised to repay said loans upon demand by the corporation. During the same year repayments were made to the corporation by Ahnelt and credited to his account as follows: February 5, cash $10,000; February 5, cash $15,000; March 8, cash $15,000; June 18, cash $4,000; June 30, Liberty bonds of a market value of $1,700; August 31, stock of The Texas Co. of a market value of $153,000; November 9, cash $10,000; and December 18, cash $1,500. At the close of business on December 31, 1918, he owed the petitioner on this account the amount of $679,728.13, which was carried on the petitioner's books of account and balance sheet as an account receivable.

During 1919 additional loans were made to Ahnelt and charged to his account on the books of the corporation. He had promised to repay said loans upon demand by the corporation. During the same year repayments were made to the corporation by Ahnelt and credited to his account as follows: January 3, cash $3,000; May 8, cash $100,000; October 20, cash $7,500; October 22, cash $2,000; October 23, cash $28,037.50; October 25, cash $5,000; October 29, cash $4,000; November 25, cash $50,000; November 26, cash $50,000. At the close of business on December 31, 1919, he had reduced his indebtedness to the petitioner on this account to the sum of $559,022.17, which was carried on the petitioner's books of account and balance sheet as an account receivable.

From time to time during the said years Ahnelt executed and delivered his several promissory notes payable upon demand to the corporation as evidence of his promises to repay to the corporation the amounts borrowed by him, and also deposited with the corporation, as collateral security for the repayment of said moneys, 77,405 shares of stock of the Pictorial Review Co., the petitioner, which said shares were during said years owned by him in his own right.

From time to time during 1917 and prior years the petitioner corporation made certain cash loans from its capital or surplus to Charles W. Nelson, a stockholder and a vice president of the corporation, which were charged to his account on the books of the corporation. Nelson had promised to repay said loans upon demand by the corporation. During the same period Nelson made a cash repayment to the corporation which was credited to his account on the books of the corporation. At the close of business on December 31, 1917, he owed the corporation on this account the amount of $9,000, which was carried on the books of account and balance sheet of the corporation as an account receivable.

During 1918 additional loans were made to Nelson and charged to his account on the books of the corporation. He had promised to repay said loans upon demand by the corporation. At the close of business on December 31, 1918, he owed the corporation on this account the amount of $57,587.73, which was carried on the books of account and balance sheet of the corporation as an account receivable.

During 1919 additional loans were made to Nelson and charged to his account on the books of the corporation. He had promised to repay said loans upon demand by the corporation. At the close of business on December 31, 1919, he owed the corporation on this account the amount of $79,587.73, which was carried on the books of account and balance sheet of the corporation as an account receivable.

From time to time during 1918 the petitioner corporation made certain cash loans from its capital or surplus to Everett D. Trumbull, a stockholder and the second vice president of the corporation, which were charged to his account on the books of the corporation. Trumbull had promised to repay said loans upon demand by the corporation. At the close of business on December 31, 1918, he owed the corporation on this account the amount of $5,500, which was carried on the books of account and balance sheet of the corporation as an account receivable.

During 1919 additional loans were made to Trumbull and charged to his account on the books of the corporation. He had promised to repay said loans upon demand by the corporation. At the close of business on December 31, 1919, he owed the corporation on this

account the amount of $17,500, which was carried on the books of account and balance sheet of the corporation as an account receivable.

At all times during 1917, 1918, and 1919, Ahnelt, Nelson, and Trumbull were solvent and financially responsible and able to repay to the petitioner on demand at any time the amounts loaned to them by the petitioner.

During 1918 and 1919 the petitioner had authorized an outstanding capital stock of 120,000 shares, which was owned by 29 stockholders, and of which Ahnelt owned 77,405 shares, Nelson 20,657 shares, and Trumbull 6,010 shares.

The capital stock of the taxpayer had a book value as follows:

| December 31, 1917 | $2,543,890.02 |
| December 31, 1918 | 2,659,683.91 |
| December 31, 1919 | 2,841,669.49 |

During 1918 and 1919 the capital stock of the petitioner had a market value equal to or in excess of its book value.

The Commissioner reduced the petitioner's surplus by eliminating entirely the accounts receivable of Ahnelt, Nelson, and Trumbull, and reduced the invested capital accordingly.

On March 19, 1917, the board of directors of the petitioner corporation declared an extra dividend equal to 50 per cent of the capital stock of the company, which was on March 21, 1917, paid to the stockholders of record.

Some time later it became apparent that the petitioner would be required to construct its own printing plant. In order to secure credit at the banks for this purpose it was necessary to improve the financial condition of the company by increasing the ratio of the current assets to the current liabilities.

At a meeting of the board of directors held November 15, 1917, further consideration was given to the matter of the dividend declared on March 19, 1917, and it was decided that the dividend was improvidently declared and that the best interests of the company, as disclosed by subsequent events and general business conditions, did not warrant or justify the declaration of the dividend. A resolution was adopted authorizing and directing the calling of a special meeting of the stockholders for the purpose of obtaining their consent to rescind and revoke the action of the board of directors in declaring said extra dividend.

At a special meeting of the stockholders held November 27, 1917, a resolution was unanimously adopted containing the following:

After due deliberation upon the resolution of the Board of Directors in pursuance of which this Special Meeting was called, said resolution having been read to, and considered by the stockholders, and after counsel for the Company stated to the stockholders present at the meeting that in his opinion, the proposed resolution was not violative of any provisions of law, and after

the auditor of the Company stated that, in his opinion, the financial affairs of the company required the action proposed by the resolution of the Board of Directors, it was, on motion duly made by Mr. Post and duly seconded by Mr. Vance, unanimously

RESOLVED that the extra dividend equal to fifty per centum of the capital stock of the company, declared by the Board of Directors on the 19th day of March, 1917, and paid on the 21st day of March, 1917, may be rescinded, revoked and cancelled, and that each stockholder return to the company the amount received by him as such extra dividend.

On November 27, 1917, after the special meeting of the stockholders, and pursuant to the foregoing resolution, certain of the stockholders gave their several promissory notes payable on demand to the petitioner corporation in the aggregate amount of $299,920.

The remaining $80 of the $300,000 dividend was owed by certain small stockholders who later consented to have their proportion of the dividend charged to their accounts, which was done.

Upon declaration of the extra dividend of 50 per cent on March 19, 1917, the surplus account of the petitioner's books was reduced by the amount of $300,000, and on November 27, 1917, after the action at the meeting of the stockholders and upon receipt of the promissory notes of the stockholders, the surplus account was increased by the amount of $300,000.

During 1917 the following cash payments were made on account of said promissory notes: December 4, $520; December 7, $125.

The following cash payments were made in 1919 by William P. Ahnelt in full payment of his promissory note given to cover his proportionate part of the rescinded dividend: June 21, $30,000; June 27, $300; July 10, $60,000; September 30, $50,000; October 23, $51,962.50.

During 1918 and 1919 said promissory notes, or the unpaid balance thereof, were carried on the books of account and balance sheets of the petitioner as notes receivable. The makers thereof were at all times solvent and financially responsible and able to pay the notes in full upon demand at any time.

The Commissioner reduced the petitioner's surplus for 1918 and 1919 by the amount of these promissory notes and reduced the petitioner's invested capital accordingly.

The Commissioner in auditing the petitioner's return for 1918 determined the income and profits-tax liability of the petitioner to be the amount of $58,528.35, and in his determination of the tax liability for 1919 made a deduction from the petitioner's invested capital as of the beginning of the taxable year for such taxes averaged for the proportionate part of the taxable year after the date when such taxes were due and payable.

OPINION.

STERNHAGEN : The Commissioner has reduced the petitioner's invested capital for 1918 and 1919 by excluding three items, (1) promissory notes of three stockholders and directors given for cash withdrawals, (2) promissory notes of all stockholders given in November, 1917, by way of rescinding a dividend paid in March, 1917, and (3) the amount of Federal taxes paid in each year upon the previous year's income.

1. The Commissioner's position in respect of the first item is in our opinion clearly unsound. That notes and accounts receivable are properly within a taxpayer's invested capital is clear from the statute itself, which in section 325 (a) defines tangible property to include " notes, and other evidences of indebtedness, bills and accounts receivable," and in section 326 (a) defines invested capital to include actual cash value of tangible property paid in for stock or shares and paid in or earned surplus and undivided profits. Notes paid in for stock or shares have been held to be within invested capital. *Hewitt Rubber Co.*, 1 B. T. A. 424; *American Steel Co.*, 1 B. T. A. 839; *Cross Mountain Coal Co.*, 2 B. T. A. 587; *Stamey-Mackey Construction Co.*, 4 B. T. A. 383. From the evidence it is entirely clear that the makers of the notes were solvent and that the corporation's receivables due from these three persons were worth no less than their face value, and they appeared upon the corporation's books and balance sheets as assets in this amount. The facts that the debtors were large stockholders and that they were, as directors and officers of the corporation, in a position to influence the corporation in making the loans, do not change the character of the accounts receivable or make them in this respect different from what they would have been had the debtors been otherwise related to the corporation. The *bona fides* of the loans or the liability of the debtors for their full repayment is upon this record beyond question. There is likewise nothing from which we could decide that the value of the accounts was less than it appeared to be upon the books. Not only were the debtors solvent and prosperous, with no history of impaired or doubtful credit, but in addition the payment of the accounts of Ahnelt was secured by the deposit of stock endorsed in blank.

There are of course situations where a full consideration of all of the attendant circumstances requires that a withdrawal from the assets of a corporation by a stockholder should serve to reduce invested capital because there is in fact no genuine asset left or intended to be left in the corporation. The *bona fides*, the intention as disclosed from the direct and circumstantial evidence, and the

value of the alleged debtors' credit are matters to be considered. In the instant case the petitioner has so thoroughly marshaled its evidence in these respects as fully to support its claim. We therefore hold that the amounts of $742,815.86 in 1918 and $656,109.90 in 1919 due from Ahnelt, Nelson, and Trumbull were properly within the petitioner's invested capital for those years.

2. We are likewise compelled by the evidence to hold that the Commissioner erroneously excluded from invested capital the amounts of notes received from the stockholders in November, 1917, in an attempted rescission of the earlier dividend. The Commissioner argues that after the dividend was declared and paid in March, when it very properly served to reduce invested capital, it could not be rescinded because it had vested in the stockholders. Whether this be true or not, the real question before us is whether the receipt by the corporation in 1917 of the notes of the stockholders served to increase its invested capital. The notes were on their face valid. They were voluntarily given by the stockholders with full knowledge of all of the circumstances and considerations upon which they were based. The corporation received them, included them in its assets, and persuaded third parties to finance it upon the strength of these notes. No one has attempted to repudiate the notes and so far as the record shows there is no circumstance to impair their value or validity. *Union Bank of Brooklyn* v. *Sullivan*, 214 N. Y. 332; 108 N. E. 558. Just as the preceding dividend had served to diminish surplus, so the receipt of valuable accounts receivable must serve to increase the surplus to the extent of their value. The value of demand notes of a solvent maker is no less than its face merely because the payee does not choose to demand. So far as this record discloses, demand would be met by the payment promised. We can not assume otherwise. As has been said in respect of the previous point, a case might well be imagined where the circumstances would overcome the presumption of *bona fides* and disclose that the notes were not in truth valid or perhaps not assets at all. But this is not such a case. We hold that the amount of the notes in question, together with the $80 not covered by notes, should be included within the petitioner's invested capital for 1918 and 1919.

3. The petitioner's contention that the previous year's taxes should not serve to reduce invested capital is met by the Board's decision to the contrary in *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168, and upon the authority of this decision we sustain the Commissioner.

> *Judgment in accordance with the foregoing opinion will be entered on 15 days' notice, under Rule 50.*