W. C. MILES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 3439, 9559.   Decided November 26, 1926.

*Edmund Burke, Esq.,* and *John G. Jaeger, Esq.,* for the petitioner.
*Arthur H. Murray, Esq.,* for the respondent.

LITTLETON: Proceeding Docket No. 9559 involves a deficiency in income and profits tax in the amount of $6,62 .14 for the fiscal year ending January 31, 1920. This deficiency was assessed February,

1925, and on November 4, 1925, the Commissioner denied petitioner's claim for the abatement of $1,911.24, the amount here in controversy.

Proceeding Docket No. 3439 relates to a deficiency of $6,506.02 for the fiscal year ending January 31, 1922, of which amount $3,225.27 is in controversy.

Petitioner claims that the inventory used by the Commissioner represented neither cost nor cost or market, whichever was lower, but was purely arbitrary, and that the Commissioner should have allowed it a deduction for exhaustion, wear and tear of machinery of 10 per cent instead of 8 per cent, and a deduction for exhaustion, wear and tear on automobile trucks at the rate of 20 per cent instead of 10 per cent per annum.

FINDINGS OF FACT.

The petitioner is a Massachusetts corporation engaged in the manufacture of interior finish, house finish, and office fixtures, with principal office at Bedford. All of the stock of the corporation was owned by W. C. Miles, who has been engaged in this business for forty years.

During the years from 1919 to 1922, inclusive, the corporation was in financial difficulties, which necessitated its borrowing sums of money from time to time during this period upon notes endorsed by its president, W. C. Miles. The banks required annual financial statements to be submitted and these were prepared by Miles and included the valuation of lumber on hand. The corporation kept an invoice book in which were pasted the original invoices showing the cost of all lumber purchased. When making these statements to the banks at the end of each year, Miles took a detailed inventory of the different grades of lumber and the number of feet of each grade. He then priced the lumber at an arbitrary figure per foot, giving little or no consideration as to whether the price represented original cost, or replacement cost or market. These inventories were written and the amounts thereof entered in a separate book kept for that purpose. After taking inventories at January 31, 1919, 1920, 1921, and 1922, Miles arbitrarily reduced the total of the inventory for the fiscal year ending January 31, 1920, in the amount of $2,500, and the inventory at January 31, 1921, in the amount of $5,500, before submitting them to the bank.

The total of the inventories for the years ending January 31, 1919, to 1922, inclusive, the amounts of the arbitrary reduction, and the value thereof as entered upon the inventory book follow:

| Year. | Original inventory. | Arbitrary reduction of total. | Used for banking purposes. |
|---|---|---|---|
| 1919 | $17,351.45 | | $17,351.45 |
| 1920 | 33,140.14 | $2,500 | 30,640.14 |
| 1921 | 33,951.95 | 5,500 | 28,451.95 |
| 1922 | 30,646.58 | | 30,646.58 |

During this period Miles was having difficulty in warding off insolvency proceedings, and as the company's operations were not profitable he gave no consideration to the matter of taxation when pricing the inventories. When the income-tax returns of the company for each of the years were prepared by the bookkeeper, they showed no tax liability and the inventories as priced for bank statements were included in the returns without further consideration by Miles as to whether the values represented cost, or cost or market, whichever was lower. Shortly after 1922 the Commissioner's field agent investigated the company's records. He disallowed certain deductions claimed, reduced the allowance claimed for exhaustion, wear and tear on machinery and automobiles, and made other adjustments not here in controversy, which resulted in a tax in the amounts hereinbefore stated. Whereupon, Miles took the original daily inventories for each of the years and proceeded in a careful and painstaking manner accurately to price the items listed thereon at cost, or cost or market, whichever was the lower. He had the original invoices showing cost and he was thoroughly familiar with the replacement cost or market of lumber at the end of each year. The inventories thus priced showed a decrease in the inventories originally taken of $1,399.39 for the fiscal year ending January 31, 1919, and $4,949.24 for the fiscal year ending January 31, 1920, an increase of $4,340.91 for the fiscal year ending January 31, 1921, and a decrease of $3,233.83 for the fiscal year ending January 31, 1922. The agent refused to accept these inventories and decreased the inventories originally taken and shown in the returns for the taxable years ending January 31, 1920 and 1922, here in question, in an arbitrary amount less than the amount at which petitioner priced them upon the basis of cost, or cost or market, whichever was lower. This action on the part of the agent was approved by the Commissioner in his determination of the tax in controversy.

The petitioner's inventories upon the basis of cost, or cost or market, whichever was the lower, for each of the years ending January 31, 1919, to 1922, inclusive, were as follows:

Jan. 31, 1919 _____ $15,952.06
Jan. 31, 1920 _____ 28,191.90
Jan. 31, 1921 _____ 38,292.86
Jan. 31, 1922 _____ 27,412.75

At the beginning of the fiscal year ending January 31, 1920, petitioner owned and used in its business wood-working machinery costing $14,624.22, and during the year additions were made costing $362.69. It also had during this year certain automobile trucks used in its business which cost $4,085.25. At the beginning of the fiscal year ending January 31, 1922, petitioner owned and used in its business machinery costing $16,929.35 and automobile trucks costing $4,085.25, as stated above.

The probable useful life of the machinery was 10 years, and a reasonable allowance for exhaustion, wear and tear during the taxable years was 10 per cent of the cost thereof per annum. The average useful life of the automobile trucks which were used for hauling lumber and in delivering petitioner's products was 5 years, and a reasonable allowance for exhaustion, wear and tear was 20 per cent of the cost thereof per annum.

> *Judgment will be entered for the petitioner on 15 days' notice, under Rule 50.*