COON AUTO CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 9330, 10116.    Promulgated October 11, 1927.

1. After the petitioner had closed its books for the calendar year 1918 it arbitrarily reduced its perpetual inventory as of December 31, 1918, by $9,234.07. The inventory was always carried at cost and the market value of merchandise included in the inventory was in excess of cost. No physical inventory was taken at the close of either 1918 or 1919. The Commissioner added to the net income reported for the year 1919 the $9,234.07 in question. *Held,* that the evidence does not show that the Commissioner was in error in making such addition to net income.

2. In 1918 and 1919 the petitioner issued capital stock in the amount of $95,000 for cash and in the amount of $95,000 to the same stockholders and received therefor certain noninterest-bearing promissory notes payable five years after date. The notes were not paid at maturity but were renewed for another five-year period and finally canceled in December, 1926, at which time the stockholders surrendered the stock for which they had given notes. *Held,* that the discounted value of said notes was not includable in invested capital.

*J. H. Kirby, Esq.,* and *P. J. Coffey, Esq.,* for the petitioner.
*J. Harry Byrne, Esq.,* for the respondent.

11340°—28——51

The above-entitled proceedings, involving deficiencies in income and profits tax for the years 1919 and 1920 in the respective amounts of $5,685.52 and $4,474.67, were consolidated for the purpose of hearing and decision. The errors alleged in the petition are (1) that the Commissioner excluded from invested capital for the taxable years the present worth of notes given in payment for capital stock, said notes having a face value of $95,000, and (2) that in determining the taxable net profits for the year 1919 the Commissioner erred in including in taxable income the sum of $9,234.07, which was an arbitrary write-down of petitioner's inventory at December 31, 1918.

FINDINGS OF FACT.

The petitioner is a South Dakota corporation organized in October, 1918. It took over an automobile business which had been established for several years. For the business it paid the book value of the assets. The predecessor business kept a perpetual inventory of merchandise on hand and took no physical inventory immediately prior to the sale to the petitioner. The petitioner's books of account were kept in accordance with the recommendations of the Ford Motor Co. and the perpetual inventory was kept on the basis of cost. After its books were closed on December 31, 1918, the board of directors met on January 13, 1919, and upon motion made and duly seconded, directed an arbitrary write-off of the book inventory as of December 31, 1918, amounting to $9,234.07. This action was prompted by a desire on the part of the directors that the assets of the business should not be overstated in the inventory. No physical inventory was taken either in 1918 or in 1919. The market price upon all items contained in the inventory was in excess of the cost during both years. In the audit of petitioner's return for 1919 the Commissioner added to the net income returned the amount of the reduction in the inventory, namely, $9,234.07, and the deficiency determined for the calendar year 1919 is predicated partly upon such addition to net income.

The authorized capital stock of the petitioner corporation was $200,000, of which amount $45,000 was issued for cash at par in 1918. On January 2, February 1, and April 1, 1919, $10,000, $2,000 and $18,000, respectively, additional stock was issued for cash at par, and on August 1 the stockholders of the $75,000 stock then outstanding subscribed pro rata for $75,000 additional capital stock and gave in payment therefor noninterest-bearing promissory notes of a face value of $75,000, maturing five years from date. On October 18, 1919, an additional $20,000 capital stock was issued for cash at par and on November 1, 1919, those stockholders subscribed

for $20,000 additional stock and gave in payment therefor non-interest-bearing promissory notes of a face value of $20,000 maturing five years from date. The noninterest-bearing notes thus received in the face amount of $95,000 were not paid upon maturity but were renewed for another five-year period. These notes were never paid. They were canceled in December, 1926, and the stock that was issued therefor was turned back to the corporation. The makers of the notes were all responsible individuals and the notes on several occasions were used as collateral by the petitioner in the borrowing of money. In its tax return for 1919 and 1920 the petitioner included in invested capital the amount of the notes in question from the dates they were received. In the audit of the returns the Commissioner excluded the $95,000 represented by the notes from invested capital.

OPINION.

SMITH: 1. The first question presented is the correctness of the action of the respondent in adding to the net income reported for 1919, $9,234.07 representing an arbitrary write-down of the inventory at the beginning of that year. The petitioner kept a perpetual inventory; the purchases of merchandise were charged to the inventory and sales of merchandise were charged out of the inventory at cost price. The only tax years involved are the calendar years 1919 and 1920. The* evidence shows that the mark-down of the inventory was entirely arbitrary and no physical inventory had been taken to show that the merchandise listed in the perpetual inventory was not on hand at the date when the write-down was made. The evidence is conclusive that the market value was in excess of cost. The effect of the write-down was the unwarranted reduction of the inventory at the close of 1919 in the amount of $9,234.07. It is the contention of the petitioner that if the inventory at the close of the year is to be increased by the amount of $9,234.07 there should be a like increase in the inventory at the beginning of the year, and that if such an increase were made the net income would not be affected. The returns of the petitioner for the years 1918 and 1919 were not introduced in evidence and the Board is without information as to the amount of the perpetual inventory shown by the books of account on December 31, 1918, before the write-down was effective, or the amount of the inventory used by the petitioner as of December 31, 1918, and January 1, 1919, in making its income-tax returns for 1918 and 1919. Without such information the Board is unable to determine whether the respondent erred in adding to the net income reported the $9,234.07 in question. If the amount of the inventory used in the return for 1919 as of January 1, 1919, was the same as that shown by the petitioner in its return for 1918 as of December

31, 1918, the action of the respondent in adding the $9,234.07 was not in error, and we have no evidence to show that this was not the case.

2. The petitioner claims the right to include in invested capital the face value of noninterest-bearing promissory notes maturing five years from date, received by the corporation for shares of stock, or the discounted value of such notes. It makes this contention upon the basis of the decision of the Board in *Hewitt Rubber Co.*, 1 B. T. A. 424, wherein it was held that notes received by that corporation in payment of capital stock were in the circumstances of the case properly included in invested capital.

The Revenue Act of 1918 permits a corporation to include in invested capital, "Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment." (Sec. 326 (a) (2).)

Under the provisions of the statutes of South Dakota a corporation is permitted to issue capital stock in exchange for promissory notes. See *Deerland Turpentine Co.*, 4 B. T. A. 1236, and cases there cited.

In *Ready Auto Supply Co.*, 2 B. T. A. 730, this Board held that certain notes given for shares of capital stock could not be included in invested capital. The evidence there showed that no use was ever made of the notes; that no cash payment was ever made thereon; and that when the notes fell due they were canceled. In that opinion we said:

Considerable testimony was taken as to the financial standing of the parties who were the makers of the notes in question. The testimony so given only strengthens the general impression that the notes were not given in good faith in payment either of the stock or of an assessment constituting a paid-in surplus. The Board is not disposed to extend what it believes to be the sound rule indicated in the *Appeal of Hewitt Rubber Co.*, *supra*, to cases generally involving indebtedness of stockholders to corporations on account of their stock. Only transactions clearly evidencing good faith may be so recognized.

In *Wall & Ochs, Inc.*, 4 B. T. A. 1093, the Board refused to allow certain notes given for capital stock to be included in invested capital. The evidence there showed that the notes bore no interest; that they were nonnegotiable; that no payments were ever demanded on the notes; and that no payments were ever made.

The fact that a South Dakota corporation may issue shares of stock upon the basis of notes given by the stockholders in payment therefor, is not decisive of the issue in the case at bar. The question is whether the notes were bona fide paid in for shares of stock. The evidence shows that the makers of the notes were responsible for their payment; also that the notes were used in some instances as security in the borrowing of money. The notes were noninterest bearing and

the evidence does not show what their discounted value might be at the date received by the corporation. The evidence also shows that when the notes matured they were not paid, but were renewed by other noninterest-bearing notes running for a period of five years, and that these notes were never paid. We think that this negatives the idea that they were bona fide paid into the corporation within the meaning of the statute. Although the corporation was in need of money and had to borrow from the bank, it did not discount the notes at the bank but at the most used them as a basis for credit. The action of the respondent in excluding the face value of the notes from invested capital is approved.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.