BRIGGS-WEAVER MACHINERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21074. Promulgated January 16, 1929.

*O. D. Brundidge, Esq., O. A. Fountain, Esq.*, and *T. F. Kennedy, C. P. A.*, for the petitioner.

*C. H. Curl, Esq.*, for the respondent.

## OPINION.

Love: The question for decision in the first issue is whether the respondent erred in increasing the value of the inventory of the petitioner at the close of the taxable year. A very few months after the inventory was completed and the original return was filed by the petitioner a revenue agent investigated the return. He increased the values of both the opening and the closing inventories. The petitioner accepted the revised opening inventory and immediately filed an amended return for the taxable year, but the value of the closing inventory is not accepted and is in dispute. The respondent admits that the amounts of the increases of the inventories were computed by applying a percentage rate, determined by the revenue agent, to the

original aggregate values claimed by the petitioner. The percentage rate used was the same for both inventories. A subsequent second field investigation was made by the respondent. There is no evidence to show what were the bases for the increases in value. From the oral discussions at the hearing it would appear that the bone of contention is whether the petitioner did, in fact, include in the detailed valuations of all of the items of the inventories. appropriate allowances for the cost of the freight charges on the shipments to the petitioner. There is no question of interrelation of the two inventories. The question is not one of method or consistency. The valuation of the opening inventory is not before us and we do not pass upon it. The closing inventory of the petitioner consisting of a loose leaf book of over a thousand pages is in evidence. The large stock in trade included a varied assortment of supplies, tools, machinery and equipment. Obviously the detailed valuation of such an inventory is an undertaking requiring experience and judgment. From an inspection of the inventory and from the testimony of the officers and employees well qualified for the task who valued the inventory, deriving the cost prices from the purchase invoices, and the market prices from current quotations and offerings, supplemented by their own experience and knowledge of the market and of values, we are well satisfied that the cost of incoming freight was carefully considered, and that the basis of the valuation was the lower of cost or market.

There is an entire absence of controverting evidence. On its face the adjustment of the revenue agent appears arbitrary; merely a summary approximation of personal opinion. Summary adjustments either upward or downward are unacceptable where unsupported by facts. *Orkins Bros.*, 2 B. T. A. 65; *Orents Department Store Co.*, 3 B. T. A. 52. Valuation of the closing inventory claimed by the petitioner should be accepted. Cf. *W. C. Miles Co.*, 5 B. T. A. 625; *Fred S. Stewart Co.*, 5 B. T. A. 436; *T. B. Floyd*, 11 B. T. A. 903.

The second issue relates to the failure of the respondent to allow any value whatever for invested capital purposes attributable to the interest-bearing promissory notes of certain of the stockholders and employees paid in to the petitioner for stock. The respondent contends that the notes did not have the value claimed for them and that even though the notes are found to be valuable they are unallowable in invested capital since the constitution of the State of Texas prohibits the issuance of capital stock for notes. Taking up, first, the question of fact, we are well satisfied from the record that the notes of J. E. Dale, $46,000; J. T. Dale, $4,653.33; W. D. Trotter, $1,900; and J. C. Weaver, $12,500, were fully worth a cash value

equal to the amounts of their face values; there was a ready market for the notes; the makers were financially able to pay; there is not the slightest doubt of the bona fides. The notes of A. S. Weaver and W. W. Williamson, we believe to be unallowable for invested capital purposes; we discern no amount of cash value allowable for them when paid in. The transactions were nothing more than prospective inducements held out to employees with the understanding that they would be permitted, but would not be required, to make capital contributions to the petitioner, and in the meanwhile the dividends on certain stock issued for their notes, but held by the petitioner as collateral, would be applied against the notes if and when paid. There remains the question of law. The Revised Civil Statutes of the State of Texas provide so far as material here, as follows:

ART. 1308. *Capital Stock.* Before the charter of a private corporation created for profit can be filed by the Secretary of State, the full amount of its authorized capital stock must be in good faith subscribed by its stockholders and fifty per cent thereof paid in cash, or its equivalent in other property or labor done, the product of which shall be worth to the company the actual value at which it was taken or at which the property was received. * * *

ART. 1330. *Increase of capital.* The board of directors, trustees or managers of a corporation may increase its authorized capital when empowered to do so by a two-thirds vote of all its stock, by complying with the provisions of Article 1348. Upon such increase of stock being made in accordance with such provisions and certified to the Secretary of State by the directors, and, if the Secretary of State is satisfied that the increase has been made in accordance with law and that the requirements of law have been complied with as to the subscription and payment of stock and in other respects, as on an original application for charter, he shall file such certificate of increase; and thereupon the same shall become a part of the capital stock of such corporation. Such certificate shall be filed and recorded in the same manner as the charter.

ART. 1331. *Unpaid Increase.* In case of failure by the stockholders to pay the unpaid portion of an increase of stock within two years from the date of the filing of the certificate of increase in the office of the Secretary of State, the charter of such company shall be forfeited, and the provisions of Articles 1339 to 1343 inclusive, shall govern the same as in case of the creation of a corporation.

ART. 1335. *Payment of stock.* The board of directors of any corporation may require the subscribers to the capital stock of the corporation to pay the amount by them respectively subscribed, in such manner, and in such installments, as may be required by the by-laws.

ART. 1353. *Watering stock.* No corporation shall issue any stock whatever, except for money paid, labor done which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received reasonably worth at least the sum at which it was taken by the company. Any corporation which violates any provision of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from, or by virtue of the laws of this State.

In the face of these statutory provisions allowing subscriptions for stock payable 50 per cent in cash or property, with the payment of the balance deferred, the respondent contends that the acceptance of the notes is prohibited under section 6 of Article XII of the Constitution of Texas, providing as follows:

No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void.

It has been held, however, that neither the note given nor the stock issued for the note is utterly void in Texas. *Washer* v. *Smyer*, 211 S. W. 985; *Thompson* v. *First State Bank of Amarillo*, 211 S. W. 977. We have had occasion previously to consider the same question with reference to similar situations in other States and have uniformly allowed the cash values for invested capital purposes. Our reasons for so holding are set out at length in the *Appeal of Hewitt Rubber Co.*, 1 B. T. A. 424, and need not be repeated here. See also *Construction Co. of North America (Delaware)*, 9 B. T. A. 963; *New Orleans Can Co. (Louisiana)*, 7 B. T. A. 1175; *Feeders Supply Co. (Missouri)*, 8 B. T. A. 839; *Haskell & Barker Car Co. (New York)*, 9 B. T. A. 1087; *Williams Steamship Co. (New York)*, 7 B. T. A. 451; *Pictorial Review Co. (New York)*, 5 B. T. A. 416; *American Steel Co. (Pennsylvania)*, 1 B. T. A. 839; *R. H. Cunningham & Sons Co. (Pennsylvania)*, 10 B. T. A. 113; *Deerland Turpentine Co. (South Dakota)*, 4 B. T. A. 1236; *Coon Auto Co. (South Dakota)*, 8 B. T. A. 763; *Cross Mountain Coal Co. (Tennessee)*, 2 B. T. A. 587; *Bowers* v. *Kaufman*, 18 Fed. (2d) 69.

In our opinion the respondent erred in failing to allow for invested capital purposes the effective average amounts of the face values of the notes of J. E. Dale, J. T. Dale, W. D. Trotter, and J. C. Weaver.

In the remaining issue the petitioner questions the propriety of the action of the respondent in adding a penalty of 5 per cent for negligence under the provisions of section 250 (b) of the Revenue Act of 1918. If after giving effect to the revisions of income and invested capital authorized in this opinion there remains a deficiency, it will be attributable to the adjustment of capital expenditures disallowed, not at issue here, but shown by the testimony of the public accountant employed by the petitioner to have been largely a question of a controversial and economic nature in which the opinion of the public accountant was followed by the petitioner.

In view of the evidence we do not believe that the petitioner is liable for the negligence penalty.

*Judgment will be rendered under Rule 50.*