**WILSON et al. v. ANDERSON, Collector of Internal Revenue.**

No. 319.

Circuit Court of Appeals, Second Circuit.

July 11, 1932.

**53**

duction in making the assessment. The taxpayer paid the additional assessment, with interest, under protest, and brought this action against the collector to recover the amount of the payment. It is conceded that, if the deduction was proper, Wilson's executors, who because of his death after bringing this action were substituted as parties plaintiff, were entitled to recover back the additional tax amounting to $11,909.59 and $2,499.03, the interest he had paid, together with interest on both amounts since the payment.

If the real estate was devised to the taxpayer directly, subject only to a mere power of sale by the executors of his father's will, there can be no doubt that he was entitled to the deduction claimed in his return. The plaintiffs insist that this is the effect of the will, but the government contends that the executors were trustees for Wilson, and that as fiduciaries they were the persons responsible for making the return for a trust estate as a taxable entity. If so, they could not have availed themselves of the deduction, for there was no income in their hands from which it could be taken.

The will of Richard T. Wilson, Sr., after giving $500,000 (by the third article) in trust for Richard T. Wilson, Jr., contained a residuary clause under which the real estate in question was disposed of as follows:

"All the rest, residue and remainder of my property, real, personal and of every kind and description, which I shall own at the time of my death, I direct my executors hereinafter named to sell and convert into personalty, and to divide the proceeds thereof into five equal parts which I give and bequeath as follows:

"(3) One of such parts to the amount of $500,000 I direct to be added to the trust fund of $500,000 created in and by the foregoing third Article of this will for the benefit of my son, Richard T. Wilson, Jr., and to be subject to the provisions of said Third Article, both as to the income therefrom and the disposition of the principal thereof, as if a part of said original trust fund; and the balance of such part I give and bequeath to my said son, Richard T. Wilson, Jr., to be his absolutely."

After making provision for the constitution and investment of trusts for his wife and children out of securities other than stocks of business and manufacturing corporations which he held, the will went on to say:

"As the balance of my residuary estate will largely consist of real estate in this and other States and shares of manufacturing and

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Root, Clark & Buckner, of New York City (George E. Cleary and Clark T. Brown, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question before us is whether the plaintiffs' testator, Richard T. Wilson, Jr., was entitled to claim a deduction in his personal income tax return for 1922 by reason of a sale made in that year at a loss by the executors of the will of his father, Richard T. Wilson, Sr. The sale was of real estate, in which the son had an undivided fifth interest. The Commissioner of Internal Revenue disallowed the loss which Wilson had claimed in his return and demanded payment of an additional tax based on the exclusion of the de-

business corporations which should not be sold excepting under favorable conditions, I direct my said executors to hold and manage such remaining portion of my residuary estate until in their judgment it can from time to time be advantageously sold and disposed of, not exceeding however a period longer than the lives of my sons, Marshall Orme Wilson and Richard T. Wilson, Jr., and the survivor of them, and I hereby authorize and empower my said executors within said period, to sell, convey, assign and transfer the same, or any part thereof, at such time or times as they may deem for the best interests of my estate, and upon such terms and conditions as they may deem proper, including the terms and mode of payment therefor. * * *

"Upon any sale or disposition being made by my said executors of such portion of my residuary estate, or any part thereof, * * * I authorize and empower my said executors if the proceeds, or any part thereof, may in their judgment be distributed among the persons entitled thereto hereunder without any detriment to their interests to so distribute them forthwith; or in their discretion to retain the same, or any part thereof, for further conversion before distribution, not, however, beyond the period of the lives of my said sons and the survivor of them.

"During the period that my said executors shall hold such portion of my residuary estate * * * they shall semi-annually pay over the net income thereof, or of such parts thereof as may be unsold or undistributed, to the persons to whom my residuary estate is bequeathed * * * in the proportion of their respective interests."

In the years 1911 and 1912 the executors of Richard T. Wilson, Sr., set up all of the trusts and additions thereto (such as the trust of $500,000 for Richard T. Wilson, Jr., and the additional trust of $500,000 for him) as directed by the will. Prior to 1922 all of the assets of the decedent not used in setting up these trusts had been distributed except the real estate above mentioned known as the Commercial building in New York City, and certain other real estate of a value of approximately $41,000, and certain personal property of a value of approximately $150,000. In 1922 the executors sold the Commercial building for $165,000, and in that year distributed $50,000 of funds in their hands, among the five residuary legatees. This sale involved a loss of $113,300 based upon the value of the building at the date of testator's death. One-fifth of this loss applicable to the interest of Richard T. Wilson, Jr., was $22,660. The latter sum he attempted to deduct from his individual income for the year 1922 as a loss incurred during that year, and it was allowed by the trial court as a proper deduction.

The deduction is defended on behalf of the taxpayer upon the theory that there was no trust affecting the real estate but a mere power of sale, and that, if there was any trust, it was one to sell and distribute. We cannot agree with either contention. It is true that the will directed a sale and doubtless effected an equitable conversion of the real estate. But it also authorized the executors either to distribute the proceeds, if such distribution was not detrimental to the interest of the testator's children, "or in their discretion to retain the same, or any part thereof, for further conversion before distribution, not, however, beyond the period of the lives" of two of his sons. The will also directed the executors to "hold and manage" the real estate in question as well as other portions of the residuary estate until it could in the judgment of the executors be "advantageously sold and disposed of," subject to the above limitation of two lives. It further provided that for the period during which the executors might hold any portion of the residuary estate they should semiannually pay over the net income "of such parts thereof as may be unsold or undistributed, to the persons to whom (the) residuary estate is bequeathed * * * in the proportion of their respective interests." It is clear from the foregoing that the will created trusts in the residuary estate. The executors were not only directed to "hold and manage" it pending a sale, but were also authorized, should they think best, to retain the proceeds of any of it which they might sell during a period measured by lives and to pay over the income of any parts undistributed. Such provisions go far beyond a mere direction to receive and apply income pending a sale and create trusts in such part of the proceeds of sale as the executors may choose to hold. The case is entirely different from a bare trust to sell and distribute and to collect the income meanwhile. Munger v. Commissioner, 16 B. T. A. 168.

We are not disposed to interpret the provision that the executors may retain proceeds of sale "for further conversion before distribution" as limited to cases where sales might be made other than for cash. It is much more reasonable to suppose that the words "further conversion" related as well to the reinvestment of cash derived from sales.

Otherwise it is hard to explain the clause directing the executors to pay over semiannually the net income of such parts of the residuary estate as might be "sold or undistributed" and the provision empowering the executors to hold the res and pay over the income during such a long period as two lives in being.

We conclude that the will created trusts in the residuary estate of which the Commercial building formed a part and that these trusts were to continue irrespective of any sales so far as the executors chose to hold rather than to distribute the proceeds. The record indicates that after the sale in question the executors continued to hold at least all but $50,000 of the $165,000 realized from the sale of the Commercial building. To what extent any part of the $50,000 is to be allocated to the proceeds of that property we need not say, for in any event the greater part of the proceeds was not distributed, but remained in the residuary trusts after the year 1922.

If the sale of the Commercial building had resulted in a profit rather than a loss, so far as the proceeds were retained for future distribution and were not distributed, section 219 (a) (3) of the Revenue Act of 1921 (42 Stat. 246) would have been applicable. Under section 219 (a) (3) and 219 (c) the executors would have had to make the return as fiduciaries and to pay the tax on such profit as inhered in the proceeds retained. We think that the same clauses would necessarily require any losses incurred in transactions entered into for profit and affecting proceeds retained to be deducted from the executors' return. Section 214 (a), 42 Stat. 239.

So far as the proceeds from the sale were distributed in 1922 to the legatees, the case would fall within section 219 (a) (4) which covers "income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals." Under section 219 (d) any income thus distributed should be included in computing the net income of each beneficiary. Losses affecting the amount distributed must be treated in the same way. The word "periodically" in section 219 (a) (4), when taken in connection with the words "whether or not at regular intervals," means no more than at a time fixed by the will or by the election of the executors to distribute in accordance with its provisions. Barton v. Commissioner, 5 B. T. A. 1008.

Article 342 of Regulations 62 provides

that: "Where under the terms of the will * * * the trustee may in his discretion distribute the income or accumulate it, the income is taxed to the trustees irrespective of the exercise of the discretion." This article is said to deprive the beneficiary of the right to make any deduction for the loss even so far as it inhered in distributions actually made. But this regulation can hardly be applied to the present case, for it seems contrary to the provisions of section 219 (a) (4), 219 (d), and 219 (e). Appeal of Scripps, 1 B. T. A. 491; Barton v. Commissioner, 5 B. T. A. 1008; Appeal of Sprague, 8 B. T. A. 173; Henn v. Commissioner, 8 B. T. A. 190.

To the extent that there was a distribution to the taxpayer of any part of the proceeds of the Commercial building, he suffered a proportionate part of the loss incurred in the sale. The distribution was of his capital investment, and any loss or impairment of it affected his net income just as a gain would have affected it in a favorable way had there been a profit. To this extent he may deduct the loss from his individual return. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457.

It is said in the government brief that "of $165,000 realized on the sale of the Commercial Building in 1922 only $50,000 was distributed to the residuary legatees." While we are not clear from the record to what extent this $50,000 was derivable either directly or by apportionment from the proceeds of sale of the Commercial building, we hold that the taxpayer was entitled to deduct from his individual return that part of one-fifth of the total loss of $113,300 represented by the ratio which the distribution to the legatees in 1922 applicable to the proceeds of sale bears to the $165,000 realized. If the $50,000 was all derived from the proceeds of sale, the taxpayer would be entitled to deduct from his return $\frac{50,000}{165,000}$ of $\frac{\$113,300}{5}$ or $6,866.66; if it was not all so derived, the ratio employed would result in a smaller deduction.

The trial court deducted one-fifth of the entire loss of $113,300 incurred in the sale of the Commercial building. This was error, for only the amount applicable to such part of the proceeds as was distributed to the taxpayer in 1922 may be deducted. That amount must be computed and fixed upon a new trial.

Judgment reversed.