JOHN L. ASHE, Inc.

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 14527.

United States Court of Appeals Fifth Circuit.

June 28, 1954.

R. B. Cannon, Fort Worth, Tex., for petitioner; Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel.

S. Dee Hanson, Ellis N. Slack, Robert N. Anderson, John J. Kelley, Jr., Sp. Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Charles W. Davis, Chief Counsel, Claude R. Marshall, Sp. Atty., Washington, D. C., Bureau of Internal Revenue, for respondent.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

This is a petition for review of proceedings in the Tax Court. The Commissioner determined deficiencies in petitioner's declared value excess profits taxes, excess profits taxes and income taxes for the years 1942 through 1946; and with the exception of exonerating petitioner from fraud penalties, the Tax Court upheld the Commissioner's determinations, with minor changes not pertinent here.

Petitioner complains of the Tax Court's decision only as it relates to the adjustment of petitioner's closing inventories for the years 1943, 1944 and 1946; and the only question here is whether the Tax Court erred in upholding the Commissioner's determination of these figures.

During the period involved petitioner operated a retail specialty store handling high-priced men's clothing and furnishings and some ladies' apparel. In taking inventory petitioner's employees systematically counted every article in the store and recorded on inventory sheets the retail selling price and mark-up of every item. At the same time each item was classified as either "good", "fair" or "poor", apparently according to the judgment of the inventory-taker. The inventory sheets were then turned over to an official of the company, who calculated the cost from the selling price less mark-up and reduced the resulting figure, in the words of the Tax Court, "by an arbitrary amount, using different factors for each of the classes, good, fair, and poor, to obtain the reported inventory values." According to petitioner's contention, the reduction from cost was for the purpose of recording "depreciation" resulting from damaged or inferior merchandise, poor quality, bad workmanship and obsolescence. Petitioner's witnesses testified that during this period it was necessary to purchase large stocks of merchandise "as is".

The Commissioner disallowed this method of reporting inventory values and arrived at an adjusted inventory for petitioner in each of the years involved, by his own calculation. The record shows that he accepted petitioner's figures for retail selling price and mark-up, making no independent investigation or determination. However, for reasons not disclosed in the record, he rejected the actual cost shown by petitioner in the same data. Instead, he made his own determination of "cost" by the employment of an "average mark-up", derived

by a mathematical calculation not revealed. He then deducted this average mark-up from the total retail selling price of all items in each year's inventory and arrived at his adjusted closing inventory. His method resulted in the same *cost* as shown by the petitioner in the years 1943 and 1944, but in a higher figure than shown by petitioner in 1946. The higher closing inventory, of course, resulted in decreasing the cost of goods sold and correspondingly increasing the tax liability.

The Tax Court found that there was no consistency in the standards of classification or in the percentage of "depreciation" employed by petitioner from year to year; that both the classification and the reduction of cost were arbitrary; that during this period there was such a scarcity of goods that it was not necessary to hold reduced-price sales; that petitioner's merchandise cost for the years involved was "on the average" 60% of its retail selling price.

Petitioner contended in the Tax Court, and here, that it was exercising its privilege of using as its inventory method the lower of cost or market. It argued that the exigencies of the period required it to purchase merchandise which often proved to be of substantially less value than cost, and that it was merely adjusting its inventory to reflect the "market" value of goods on hand.

Section 22(c) of the Internal Revenue Code, 26 U.S.C. 22, provided that the Commissioner, with the approval of the Secretary, should prescribe the basis upon which inventories could be taken, and that such basis should conform as nearly as possible to the best accounting principles in the trade or business and should clearly reflect income. Section 29.22(c) of Treasury Regulation 111, as then in effect, provided that inventory rules could not be uniform and that consistency would be given greater weight than any particular method, so long as the method used was substantially in accord with the regulations. It further

stated that the bases most commonly used were cost, and the lower of cost or market; and it defined "market" as meaning "the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer." The regulation did allow adjustment of inventories for damage, shopwear, obsolescence and other similar factors, whichever basis was used; but it required such exceptional goods to be valued at "bona fide selling prices less direct cost of disposition." It then explained: "Bona fide selling price means actual offering of goods during a period ending not later than 30 days after inventory date. The burden of proof will rest upon the taxpayer to show that such exceptional goods as are valued upon such selling basis come within the classifications indicated above, and he shall maintain such records of the disposition of the goods as will enable a verification of the inventory to be made." [1]

■ It is clear that Congress vested wide discretion in the Commissioner with respect to determining the rules applicable to inventories. The regulations promulgated by him were detailed and fair. The Tax Court was undoubtedly correct in holding that the method used by the petitioner did not conform to the regulations and did not clearly reflect petitioner's income. That is true whether petitioner was attempting to establish "bona fide selling price" (as its method suggests) or was attempting to use the lower of cost or market (as it argues). Its system of arbitrary classification and application of arbitrary reductions from cost was clearly not in substantial accord with the regulations.

But petitioner also contends that the method employed by the Commissioner and approved by the Tax Court in adjusting its inventory failed to grant a reasonable allowance for the factors of damage, shopwear, defective merchandise and broken lots. It cites Cohan v.

1. See Code of Federal Regulations, Cumulative Supplement (1938–1943), Title 26, Sections 29.22 (c)–1, (c)–2 and (c)–4.

Commissioner, 2 Cir., 39 F.2d 540, as authority for its claimed right to such an allowance. In disposing of this contention, the Tax Court said: "The average mark-up for petitioner's business does, *because it is average,* consider the losses and exigencies above named." (Emphasis by the writer.)

We agree with petitioner that this statement is unrealistic, for it is apparent from the record that the use of the average mark-up by the Commissioner did nothing more than achieve a mathematical result which he substituted for petitioner's actual cost. We can see no relation between the arithmetical average of petitioner's mark-up and any lessened value of petitioner's merchandise, through the operation of the factors mentioned. Nonetheless, we are convinced that the Tax Court was correct in rejecting petitioner's claim for adjustment for these factors.[2] We do not understand the regulations or the code to grant to a taxpayer any *unqualified* right to take such factors into consideration when ascertaining his proper inventory, nor do we perceive the Cohan rule to require such an interpretation.

The regulations provided a specific method by which the petitioner could have obtained the benefit sought, by valuing the goods at bona fide selling price. Since petitioner's method was clearly not in substantial compliance with the prescribed procedure, and since petitioner did not and cannot now present evidence from which bona fide selling price can be determined according to the method prescribed, we hold that the Tax Court was correct in refusing to adjust petitioner's inventory for these factors.

The rule announced in the Cohan case is essentially an equitable one—that where the law and the evidence clearly show that some deduction is warranted, it is error to refuse to allow any deduction simply because the exact amount thereof is impossible or difficult to compute. It may be that in the future problems concerning the valuation of inventories will be presented to this Court in such circumstances as to necessitate the application of the underlying equity of the Cohan rule, as has occurred under other phases of the tax laws.[3] Indeed, the regulation discussed herein itself embodied the substance of the rule when it prescribed the general method by which a taxpayer could take into consideration the factors alleged by petitioner. In the instant case, however, it is necessary only to state that the Cohan rule does not require the Commissioner to grant any allowance for the factors alleged to be operative against petitioner's original cost.

Finally, petitioner contends that the Commissioner's method is arbitrary in that it rejects petitioner's actual cost and substitutes a figure which has no substantial basis. On this point, we are constrained to agree with petitioner. As previously stated, the Commissioner used both the retail selling price and mark-up from data furnished by petitioner, but rejected petitioner's actual cost available in the same data. The record contains nothing to explain or justify the Commissioner's substitution of his own estimated cost calculated by using the average mark-up.[4] In American Pitch Pine Export Co. v. Commissioner, 188 F.2d 721, this Court held that a taxpayer could

---

2. If the Tax Court's findings are correct, they should be sustained on review, even if the reasons given are incorrect. Helvering v. Gowran, 302 U.S. 238, 58 S. Ct. 154, 82 L.Ed. 224; Graves, Inc., **v.** Commissioner, 5 Cir., 202 F.2d 286.

3. See, for example, Wodehouse v. Commissioner, 2 Cir., 177 F.2d 881; Bankers Trust Co. v. Higgins, 2 Cir., 136 F.2d 477; Bryant v. Commissioner, 2 Cir., 76 F.2d 103; Wilson v. Anderson, 2 Cir., 60 F.2d 52.

4. In his brief, the Commissioner admits that he required the petitioner "to use the *cost* basis in order that its income might be clearly reflected". He urges that the petitioner's complaint against the average mark-up method makes "a distinction without a difference" because his method reached the same cost as that shown by petitioner. However, the Tax Court's findings show that the Commissioner increased petitioner's actual cost inventory in 1946 by $12,129.74.

not use an estimated inventory to his advantage when his actual figure was available at the time the return was filed. We think it only proper to apply the same reasoning to the Commissioner's action in this case.

As stated, the Commissioner's method resulted in the same cost figures as shown by the petitioner for the years 1943 and 1944, but in a higher figure for 1946. For the reasons assigned, the Tax Court's decision is reversed insofar as it holds petitioner's closing inventory for the year 1946 to be $167,912.36; and the matter is remanded to the Tax Court with instructions to find the closing inventory for the year 1946 to be $155,-782.62, petitioner's actual cost, and to redetermine petitioner's 1946 tax liability accordingly.[5] In all other respects, the decision of the Tax Court is affirmed.

---

5. Section 1141(c) (1) of the Internal Revenue Code, 26 U.S.C. § 1141(c) (1), authorizes this Court to modify or reverse the decision of the Tax Court, with or without remanding the case, as necessary in the interest of justice. See also

Commissioner of Internal Revenue v. Scottish American Inv. Co., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Rosenthal v. Commissioner, 2 Cir., 205 F.2d 505; Bodden v. Commissioner, 5 Cir., 182 F.2d 624.