Estate of Ocie M. Jones, Deceased, Ruth M. Jones, Executrix, and Ruth M. Jones v. Commissioner. Vergil L. Jones and Katherine W. Jones v. Commissioner.
Estate of Jones v. Commissioner
Docket Nos. 58721, 58722.
United States Tax Court
T.C. Memo 1961-5; 1961 Tax Ct. Memo LEXIS 344; 20 T.C.M. (CCH) 26; T.C.M. (RIA) 61005; January 18, 1961
Palmer K. Ward, Esq., and Albert Ward, Esq., for the petitioners. Bernard J. Doyle, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies in income tax and additions to tax against the petitioners as follows: Additions to Tax. I.R.C. 1939
Docket No.
Year
Deficiency
Sec. 294(d)(1)
Sec. 294(d)(2)
58721
1950
$ 9,974.28
$1,436.24
$ 899.20
1951
28,108.60
4,177.82
2,503.27
58722
1950
9,886.94
1,405.62
879.87
1951
29,253.56
4,294.36
2,550.37
The questions for decision *345 are whether Jones Auto Company, an equal partnership composed of Ocie M. Jones and Vergil L. Jones, was entitled to mark down its inventory of new house trailers below cost by flat percentages during the last three months of the years 1950 and 1951, and whether petitioners are liable for additions to tax under section 294(d)(1) and section 294(d)(2) of the Internal Revenue Code of 1939 for each of the taxable years 1950 and 1951. Findings of Fact Some of the facts have been stipulated and are found as stipulated. During the years involved, Ocie M. Jones, now deceased, and Vergil L. Jones were equal partners in a partnership known as Jones Auto Company, doing business in Indianapolis, Indiana. The partnership was formed in 1932 and engaged in the business of selling new and used automobiles, principally De Sotos and Plymouths. In the summer of 1947, due to the inability to secure a sufficient number of automobiles for sale, the partnership, in addition to its automobile business, entered into the business of selling house trailers. Partnership returns for the years 1950 and 1951 were filed with the collector of internal revenue for Indiana. Ocie M. Jones and Ruth M. Jones were *346 husband and wife during the years involved, and were residents of Indianapolis. They filed joint income tax returns for the years 1950 and 1951 on a calendar year basis with the collector of internal revenue for Indiana. Vergil L. Jones and Katherine W. Jones are husband and wife, and residents of Indianapolis. They filed joint income tax returns for the years 1950 and 1951 on a calendar year basis with the collector for Indiana. Jones Auto Company, hereafter referred to as the partnership, marked down from cost its year-ending inventories of new house trailers on hand at December 31, 1949, December 31, 1950, and December 31, 1951, by the respective amounts of $60,550.27, $97,719.24 and $163,589.26. The partnership arrived at its claimed markdowns of new house trailers on hand at the end of 1949 in the amount of $60,550.27 as follows: At the end of October, the new house trailers on hand were marked down 20 per cent from cost. At the end of November, a further markdown of 20 per cent was made, this time from the original cost less the markdowns in October. At the end of December, a markdown of 30 per cent of the adjusted cost (original cost less October and November markdowns) *347 was made. The over-all markdowns for 1949 equaled 55 per cent of the original cost. The partnership arrived at its claimed markdowns from cost of its new house trailers on hand at the end of 1950 and 1951 in the respective amounts of $97,719.24 and $163,589.26 as follows: For October and November of each year the markdowns were the same as in 1949, that is, 20 per cent of cost in October and for November 20 per cent of cost as adjusted by the October markdown. Instead of the 30 per cent of such adjusted cost as in 1949, the markdowns in December of 1950 and 1951 amounted to 20 per cent of the cost as adjusted (original cost less October and November markdowns). The over-all markdowns in each of the years 1950 and 1951 equaled 48 per cent of cost. As of December 31, 1950, the partnership had 91 new house trailers on hand. These trailers were acquired during 1950, as follows: Number
Month
Acquired
May
1
July
2
August
5
September
15
October
29
November
13
December
26
As of December 31, 1951, the partnership had 147 new house trailers on hand. Except for one acquired in November 1950, they were acquired during 1951, as follows: Number
Month
Acquired
February
1
March
1
April
4
May
1
June
4
July
3
August
2
September
13
October
31
November
72
December
14
Total acquired during 1951
146
Acquired November 1950
1
Total on hand Dec. 31, 1951
147
*348 The new house trailers on hand at the end of the years 1950 and 1951 respectively cost $248,246.86 and $408,735.41, and they were sold for $336,260 and $517,810.96. All of the trailers listed in the 1950 year-ending inventory were sold above cost, and only two trailers of the 1951 year-ending inventory were not sold above cost and one of those was sold at cost. New models of house trailers were usually introduced to the market by the manufacturers in the late summer or early fall of each year. Respondent added back to or increased the opening inventory (January 1, 1950) per the books and as reported in the partnership return for 1950 by $60,550.27, which was the amount of markdowns of new house trailers in the year-ending inventory at December 31, 1949. Respondent disallowed or added back to the year-ending inventory of the partnership as shown by its books and as reported in its income tax returns the markdowns from cost of new house trailers on hand as of the end of the years 1950 and 1951 in the respective amounts of $97,719.24 and $163,589.26. Respondent's determination of the inventory adjustment of the partnership for 1950 was computed as follows: Markdowns of December 31, 1950,
inventory
$97,719.24
Markdowns of December 31, 1949,
inventory
60,550.27
Net inventory adjustment for 1950
increasing partnership net in-
come
$37,168.97
*349 Respondent's determination of the inventory adjustment of the partnership for 1951 was computed as follows: Markdowns of December 31, 1951,
inventory
$163,589.26
Markdowns of December 31, 1950,
inventory
97,719.24
Net inventory adjustment for
1951 increasing partnership net
income
$ 65,870.02
On June 15, 1950, Ocie M. Jones and Ruth M. Jones filed a declaration of estimated tax for the year 1950, in which they estimated their income tax liability for 1950 to be $7,340.66, the same amount of tax they had paid for 1949. With the declaration they paid $500, and on or about January 26, 1951, they paid an additional $1,000 on the 1950 estimated tax. On their return for 1950, they reported a tax of $6,512.40, took credit for payments on their 1950 declaration of estimated tax of $1,500 and paid the balance of $5,012.40. They also filed a declaration of estimated tax for 1951 on or about November 22, 1951, declaring their estimated tax to be $6,512.40, the same amount of tax reported on their 1950 return. With the declaration they paid $2,000, and on or about January 28, 1952, they paid an additional $2,000 on their 1951 estimated tax. On their return for 1951, *350 they reported a tax of $17,693.60, which included self-employment tax of $81, took credit for payments on their 1951 declaration of estimated tax of $4,000 and paid the balance of $13,693.60. On June 15, 1950, Vergil L. Jones and Katherine W. Jones filed a declaration of estimated tax for the taxable year 1950, in which they estimated their income tax liability for 1950 to be $7,113.60, the same amount of tax they had paid for 1949. With the declaration they paid $500, and on or about January 29, 1951, they paid an additional $1,000 on the 1950 estimated tax. On their return for 1950, they reported a tax of $6,277.60, took credit for payments on their 1950 declaration of estimated tax of $1,500 and paid the balance of $4,777.60. They also filed a declaration of estimated tax for 1951 on November 22, 1951, declaring their estimated tax to be $6,277.60, the same amount of tax they reported on their 1950 return. With the declaration they paid $2,000, and on or about January 31, 1952, they paid an additional $2,000 on the 1951 estimated tax. On their 1951 return, they reported a tax of $17,333.62, which included self-employment tax of $81, took credit for payments on their 1951 declaration *351 of estimated tax of $4,000 and paid the balance of $13,333.62. Respondent determined that Ocie M. Jones and Ruth M. Jones and Vergil L. Jones and Katherine W. Jones failed to comply with the provisions of section 58 of the Internal Revenue Code of 1939 governing the filing of declarations of estimated tax by individuals and under the provisions of section 294(d)(1) and section 294(d)(2) were liable for additions to tax for the taxable years 1950 and 1951, for failure to pay estimated tax when due and for substantial underestimate of estimated tax. Opinion In addition to the adjustments covered by the issues submitted for decision, the respondent disallowed an addition of $600 to bad debt reserves for each of the years 1950 and 1951 and for the year 1951 restored to income $17,500, described as "Finance Company Holdback Reserves." While these adjustments were alleged as errors in the petitions, the issues so raised were abandoned at the trial. The primary issue is whether the partnership was entitled to mark down its inventory of new house trailers below cost by flat percentages during the last three months of the taxable years. Petitioners contend that the markdown of the *352 inventory as made by the partnership clearly reflected the reasonable market value of the new house trailers on hand at the close of the years in question, and that the partnership, since it entered into the business of selling new house trailers, has valued its inventory consistently and uniformly and followed good accounting practices in order truly to reflect the income of the partnership. Respondent's position is that the method used by the partnership of valuing the inventory does not clearly reflect income; that the markdowns are arbitrary and in no way in conformance with any acceptable accounting practice; and that the soundness of his determination is indicated when the amount of the proceeds from the sales of the new house trailers is taken into account. Section 22(c) of the Internal Revenue Code of 1939 provides that "[whenever] in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or *353 business and as most clearly reflecting the income." Section 29.22(c)-2 of Regulations 111 provides, inter alia, that "[in] order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations"; that the bases of valuation most commonly used were cost and cost or market, whichever is lower, and that "[any] goods in an inventory which are unsalable at normal prices * * * because of damage, imperfections, shopwear, changes of style * * * or other similar causes, * * * should be valued at bona fide selling prices less direct cost of disposition"; that "[bona] fide selling price means actual offering of goods during a period ending not later than 30 days after inventory date"; and that "[the] burden of proof will rest upon the taxpayer to show that such exceptional goods as are valued upon such selling basis come within the classifications indicated above, and he shall maintain such records of the disposition of the goods as will enable *354 a verification of the inventory to be made." The partnership went into the business of selling new house trailers in 1947, at which time it was also engaged in selling new and used automobiles, principally De Sotos and Plymouths. It is not shown what method of inventory the partnership used in 1947 and 1948. The inventories of its new house trailers as of the close of the calendar years 1949, 1950 and 1951 were marked down from cost by the respective amounts of $60,550.27, $97,719.24 and $163,589.26. For 1949 the cost of the new house trailers on hand at the end of October were marked down 20 per cent, at the end of November there was a further markdown of 20 per cent of original cost less October markdowns, and at the end of December a markdown of 30 per cent of the original cost less the October and November markdowns. Similarly, in October and November of the years 1950 and 1951, the markdowns percentage-wise were the same as in those months in 1949, but the December markdowns in 1950 and 1951 were 20 per cent instead of 30 per cent of cost as adjusted by the October and November markdowns. Of the 91 new house trailers on hand at the close of 1950, all but 8 were acquired *355 during the last four months, 15 in September, 29 in October, 13 in November and 26 in December. Of the 147 on hand at the end of 1951, one was acquired in November 1950, 16 during the months of February through August, and 130 during the last four months, 13 in September, 31 in October, 72 in November and 14 in December. With two exceptions, all were sold above the original cost, and one of those was sold at cost. It is apparent that the new trailers acquired in October, November and December were marked down arbitrarily regardless of make, model, changes in style, imperfections, or similar causes. The over-all markdowns for 1949 amounted to 55 per cent, and in 1950 and 1951 they amounted to 48 per cent of the original cost. Respondent has added back to the closing inventories for 1950 and 1951 the markdowns from cost, and has been consistent by restoring the opening inventory for 1950 to cost. Thomas Shoe Co., 1 B.T.A. 124. The claim of the petitioners that the markdown figures correctly reflected the true market value of the trailers at the end of the years as distinguished from cost, is not borne out by the evidence. Petitioners have shown the original cost of *356 the new house trailers on hand at the end of the taxable years involved, but, except for the opinion of one partner, the claim that the market value of the trailers at the year's end was below such cost is not supported of record. In fact, the testimony of one witness for the petitioners negates the method used by the partnership in marking down its costs. This witness had been in the house trailer business for a number of years and he arrived at the lower of cost or market value at the end of the year by taking 25 per cent from the original cost of older models, but new models were carried at cost. There is some evidence indicating that the value of an old model would be decreased by the introduction by the manufacturer of a new model. The evidence indicates that new models usually came out in the late summer or early fall, and it also shows that most of the trailers obtained by the partnership were obtained during the last four months of the year. The later sales of all but two of the trailers listed in the closing inventories of 1950 and 1951 at more than their original cost support the respondent's determination that the partnership was not warranted in marking down the costs of *357 those trailers. It is evident that the partnership has used an inventory method of valuing its new house trailers that is not in accordance with the statute and the regulations, nor in accordance with good accounting practices. The method of arbitrarily marking down the cost inventory by subtracting a flat percentage is not permissible. O. A. Steiner Tire Co., 9 B.T.A. 1289; Coon Auto Co., 8 B.T.A. 763, affd. 35 F. 2d 504; Perkins Sash & Door Co., 5 B.T.A. 847; Orkin Bros., 2 B.T.A. 65. Petitioners argue that the method used by the partnership should be approved because it has been consistently used. It is true that great weight should be given to consistency rather than to faulty method of inventory so long as the method used substantially reflects income, but where the method does not clearly reflect income, little weight should be given to consistency. Section 29.22(c)-2, supra. John L. Ashe, Inc., 214 F. 2d 13, affirming a Memorandum Opinion of this Court, on disallowing arbitrary deductions from cost in making closing inventory; C. Willenborg & Co., 5 B.T.A. 788; Buss Co., 2 B.T.A. 266. *358 See also Klein Chocolate Co., 32 T.C. 437, and Geometric Stamping Co., 26 T.C. 301. The evidence refutes rather than supports the proposition that the markdowns reflected market values, and shows that the formula followed in the valuing of the inventories did not clearly reflect income. As stated above, the basis of inventories for 1947 and 1948 is not shown, and it cannot be said that the markdown basis for 1950 and 1951 of 48 per cent is consistent with the markdown of 55 per cent for 1949. Petitioners have not shown that respondent erred in disallowing the markdowns, and his determinations are accordingly sustained. While in each case herein the petitioners did allege that the respondent erred in his determination of additions to tax under both section 294(d)(1) and section 294(d)(2), there were no allegations of fact as a basis for the allegations of error. On brief, their position seems merely to be that under Commissioner v. Acker, 361 U.S. 87, they may not be subjected to two additions to tax with respect to the filing of the declarations of estimated tax and the payment of the estimated tax shown thereon. In the Acker case, the taxpayer *359 filed no declaration of estimated tax, and the Supreme Court held that a failure to file a declaration of estimated tax could not be regarded as an estimate of tax at zero, and that in such case the addition to tax under section 294(d)(2) was not permissible. In the instant cases, declarations of estimated tax were filed, even though belatedly, and the Acker decision is not in point. Rose S. Harkins, 33 T.C. 365. Under section 294(d)(1)(B), provision is made for an addition to tax in the event of failure to pay an installment of estimated tax when due, unless such failure is shown to be due to reasonable cause and not to willful neglect. The facts show that there was failure to pay installments of estimated tax when due, and there is no showing that such failure was due to reasonable cause and not to willful neglect. The respondent's determination in each case is accordingly sustained. The respondent has also determined an addition to tax in each of the cases herein under section 294(d)(2) for substantial underestimate of tax. Patently, the tax estimated in each case was substantially less than 80 per cent of the correct tax. It is provided, however, that section *360 294(d)(2) shall not apply where the taxpayer has made timely payment of the estimated tax within or before each quarter "in an amount at least as great as though computed * * * on the basis of the taxpayer's status with respect to the personal exemption and credit for dependents on the date of the filing of the declaration for such taxable year * * * but otherwise on the basis of the facts shown on his return for the preceding taxable year." In each instance, the petitioners did file declarations, even though untimely, showing their estimated tax for 1951 to be in the same amount as had been reported on their returns for 1950. For 1950, the amounts shown on the declarations as estimated tax were in the amounts which it was stated had theretofore been paid as income tax for 1949, and could have been in the amounts shown on the 1949 returns. Be that as it may, however, the addition to tax under section 294(d)(2) where there has been a substantial underestimation of tax is made inapplicable only if there has been a timely payment of estimated tax within or before each quarter in amounts at least as great as the amounts indicated in that portion of the statute just quoted. It could be *361 that if the petitioners had timely paid the quarterly installments of the estimated tax shown on their declarations the amounts thereof would have been such as to make section 294(d)(2) inapplicable. No such payments were made, however, and, such being the case, the respondent's determination of addition to tax under section 294(d)(2) in each case was correct and proper. Decisions will be entered for the respondent.